**EXHIBIT "A"**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          ) Chapter 11
ETOYS, INC., et al.,            )
                                )
            Debtors.            ) Case No. 01-706 (MFW)
                                ) through Case No. 01-709 (MFW)
                                ) Jointly Administered
                                )

### OPINION[1]

Before the Court are Motions filed by a shareholder, Robert

Alber ("Alber"), and an administrative claimant, Collateral

Logistics, Inc. ("CLI"), against Barry Gold ("Gold"), Morris

Nichols, Arsht & Tunnell ("MNAT") and Traub, Bonaquist, Fox LLP

("TBF") and certain of their partners (collectively "the

Respondents") seeking removal, disgorgement of fees, and

sanctions for contravening the disclosure requirements of

Bankruptcy Rule 2014 and the conflict of interest prohibitions of

section 327(a) of the Bankruptcy Code.  The Movants also ask the

Court to refer the matter for criminal and disciplinary

investigations.  The Respondents oppose the Motions.  The United

States Trustee (the "UST") initially filed a Motion seeking

disgorgement of fees from TBF but now seeks approval of a

settlement of that Motion.  A Motion seeking approval of a

---

[1]  This Opinion constitutes the findings of fact and conclusions
of law of the Court pursuant to Federal Rule of Bankruptcy
Procedure 7052, which is made applicable to contested matters by
Federal Rule of Bankruptcy Procedure 9014.

10/4/05
#2319

settlement with Goldman Sachs & Co. ("Goldman") is also pending.
For the reasons set forth below, the Court will strike the CLI
Motion, grant the Alber Motion as to MNAT in part, and approve
the TBF and Goldman settlements.  The Court will deny Alber's
Motion as to Gold, but articulates herein a new requirement that
officers of a debtor must in the future disclose any connections
they have with other parties in the case which create a potential
or actual conflict of interest.

I.    BACKGROUND

On March 7, 2001 ("the Petition Date"), eToys, Inc., and
certain of its affiliates (collectively "the Debtors") filed
voluntary petitions for relief under chapter 11 of the Bankruptcy
Code.  The Debtors were electronic retailers of toys and other
children's products.

On April 5, 2001, the Debtors filed applications to retain
two firms as their bankruptcy attorneys: Irell & Manella
("Irell") and MNAT.  The UST objected to Irell's retention
arguing that Irell was not disinterested under section 327(a)
because Peter Juzwiak, the Debtors' Vice President and General
Counsel, was to join the firm as a partner effective April 30,
2001.  As a result, Irell was retained as special counsel only.

In connection with the MNAT retention application, partner
Robert Dehney ("Dehney") submitted an affidavit listing parties
in interest in the case that the firm had represented within the
previous three years or was representing at the time. (None of
the other representations were on matters related to the
Debtors.)  The Dehney Affidavit failed to disclose that, at that
time, MNAT was representing General Electric Capital Corporation
("GECC") and two affiliates of Goldman ("the Goldman Affiliates")
in the bankruptcy case filed by Finova Capital Corporation
("Finova") on the same day that the Debtors filed their case.  No
objections were filed to the MNAT application and, as a result,
the Court approved MNAT's retention on April 25, 2001.

On March 16, 2001, the UST appointed the Official Committee
of Unsecured Creditors ("the Committee").  The Committee retained
TBF as its counsel, which was approved by the Court on April 25,
2001.  On May 21, 2001, the Debtors hired Gold to coordinate
their liquidation.  On July 23, 2001, after the Debtors had
obtained D&O insurance, Gold was named President and CEO.  At no
time did Gold or TBF disclose that Gold and TBF's senior partner,
Paul Traub, were partners in an entity known as Asset Disposition
Advisors, LLC ("ADA") or that, TBF paid Gold $30,000 a month from
February to May 2001 for his services to ADA.

3

On November 1, 2002, the Court confirmed the Debtors' First
Amended Consolidated Liquidating Plan of Reorganization ("the
Plan"), which went effective on November 5, 2002.  Pursuant to
the Plan, the Debtors' remaining assets were vested in EBCI, Inc.
(the "Reorganized Debtor"), which was to be managed by a Plan
Administrator.  Gold was appointed as the Plan Administrator and
retained MNAT as counsel for the Reorganized Debtor.  The
Committee was dissolved and succeeded by the Post Effective Date
Committee (the "PEDC").  The liquidation of the Reorganized
Debtors' assets is close to conclusion.  The secured and priority
creditors have largely been paid in full and unsecured creditors
are expected to receive a distribution of approximately 16%.
Shareholders will receive no distribution.

On November 24, 2004, the PEDC filed a Motion for approval
of a settlement it had reached with Goldman for the return of
$200,000 of a success fee which had been paid pre-petition by the
Debtors.  Alber and CLI filed objections to that Motion asserting
that the attorneys and members of the PEDC had conflicts of
interest.

On December 20, 2004, Alber filed an emergency Motion for
sanctions and related relief against Gold, TBF and certain of its
partners.  On December 22, 2004, CLI filed a similar Motion.  On
January 25, 2005, Alber filed a Motion against MNAT purportedly

on behalf of himself and other shareholders which also seeks disqualification and disgorgement of fees.  Objections were filed by the Respondents.

On February 15, 2005, the UST filed its own Motion which sought disgorgement of fees from TBF (the "Disgorgement Motion"). The Disgorgement Motion was subsequently settled and a Motion to approve the settlement was filed on February 24, 2005 (the "Settlement Motion").  Alber and CLI filed pleadings in support of the Disgorgement Motion and in opposition to the Settlement Motion.

A hearing on all the Motions was held on March 1, 2005, at which evidence and testimony were presented in support of the parties' positions.  At the conclusion, the Court permitted additional briefing by the parties to explain their positions based on the facts that had been presented.[2]  That briefing is complete and the issues are now ripe for decision.

## II.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 &

---

[2]  The Court directed the parties to complete briefing by March 15, 2005.  Despite that direction, Alber and Mr. Haas, purportedly on behalf of CLI, have continued to file pleadings related to the issues at bar.  The Court has stricken those pleadings.  Further, the pleadings filed by Mr. Haas on behalf of CLI have been stricken because a corporation must have counsel represent it in federal court.  See Discussion infra at Part A1.

157(b)(2)(A), (B) & (O).

III. <u>DISCUSSION</u>

Alber alleges that the Respondents violated Bankruptcy Rule 2014 and section 327(a) of the Bankruptcy Code by not disclosing connections to other parties in the case, some of which he asserts are actual conflicts of interest. Alber contends that the delayed disclosure was intentional and that even the subsequent disclosure of the relationships failed to comply with the requirements of the Rule. Finally, Alber suggests that the Respondents violated Bankruptcy Rule 2016, Rule 11 and various provisions of title 18. Alber asks the Court to: (1) compel the Respondents to disgorge all payments that they have received to date in the case; (2) dismiss MNAT and TBF as counsel to the Reorganized Debtor and the PEDC, respectively; (3) permit Alber to conduct far-ranging discovery of the Reorganized Debtor and counsels' records; (4) appoint a trustee; and (5) refer the entire matter for additional criminal and disciplinary investigations into the conduct of the case.

A.    <u>Preliminary Arguments</u>

The Respondents raise preliminary arguments that the Court is precluded from even addressing the merits of the Motions.

1.    <u>CLI Motion</u>

At the hearing it was asserted that the Motion filed by CLI was procedurally improper because it was filed by a corporation without benefit of an attorney. The Court agreed and ruled that CLI, as a corporation, may not file pleadings or appear except through counsel. Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). Therefore, the pleadings filed by CLI have not been considered.[3]

        2.   Jurisdiction over the PEDC and Reorganized Debtors

The Respondents also assert that the Court lacks jurisdiction over the PEDC, the Reorganized Debtor, and the Plan Administrator. Section 5.3(c)(v) of the Plan empowers the Plan Administrator to select, retain and compensate professionals without approval of the Court. Therefore, the Respondents assert that the Court does not have the power to remove TBF and MNAT from their post-confirmation employment as requested by Alber.

The Plan does, however, expressly provide that the Court retains jurisdiction to remove the Plan Administrator for cause. (See Plan at § 5.2.) See also Griffin Resorts, Inc. v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 161

---

[3] This has not, however, diminished the issues addressed by the Court because Alber's pleadings are substantially identical to CLI's pleadings.

(3d Cir. 2004) (holding that "Retention of jurisdiction

provisions will be given effect, assuming there is bankruptcy

court jurisdiction.")

Notwithstanding that retention language, however, the post-

confirmation jurisdiction of the Bankruptcy Court is extremely

limited.  See, e.g., Resorts Int'l, 372 F.3d at 161 (concluding

that, notwithstanding retention of jurisdiction provisions in a

plan, "neither the bankruptcy court nor the parties can write

their own jurisdictional ticket.  Subject matter jurisdiction

'cannot be conferred by consent' of the parties. . . .  Where a

court lacks subject matter jurisdiction over a dispute, the

parties cannot create it by agreement even in a plan of

reorganization.") (citations omitted); Walnut Assocs. v. Saidel,

164 B.R. 487, 491-92 (E.D. Pa. 1994) ("Although the jurisdiction

of the bankruptcy court continues until the Chapter 11 case is

closed, once a plan has been confirmed, the court's jurisdiction

begins to weaken.") (citations omitted).

The Bankruptcy Court, however, does retain jurisdiction

post-confirmation to enforce the Plan.  11 U.S.C. § 1142(b)

("[t]he court may direct the debtor and any other necessary party

. . . to perform any . . . act . . . that is necessary for the

consummation of the plan.").  See, e.g., In re Terracor, 86 B.R.

671, 676 (Bankr. D. Utah 1988) ("The clear intent of section

8

1142(b) is for the court to retain its jurisdiction to assure
that the terms and provisions of the confirmed Chapter 11 plan
are carried out until the plan is completed and a final decree is
entered closing the case.").

The Court concludes, nonetheless, that the issue of
replacement of professionals for the PEDC and the Reorganized
Debtors or the Plan Administrator does not fall within that
limited jurisdiction.  The identity of the Plan Administrator or
its professionals does not have such a significant impact on the
estate for the Court to conclude that it is related to the
bankruptcy case.  This case is factually indistinguishable from
the Resorts Int'l case where the Third Circuit held that the
bankruptcy court did not have jurisdiction over a suit by the
post-confirmation trust against a trust professional for post-
confirmation activities, notwithstanding the retention of
jurisdiction language in the plan and confirmation order.  372
F.3d at 161.  Therefore, the Court will deny Alber's request to
replace Gold, MNAT and TBF in their post-confirmation roles.  The
Court does, however, have jurisdiction to deal with the issues
raised by the parties' pre-confirmation actions.

### 3.    Appointment of Trustee or Examiner

The Respondents further argue that Alber's request for the
appointment of a trustee or examiner must be denied.  Section

1104 of the Bankruptcy Code, which provides the authority for

such an appointment, states:

> (a)  At any time after commencement of the case but
> before confirmation of a plan, on request of a party in
> interest or the United States trustee, and after notice
> and a hearing, the court shall order the appointment of
> a trustee –
>> (1) for cause . . .; or
>> (2) if such appointment is in the interests
>> of creditors, any equity security holders,
>> and other interests of the estate. . . .
>
> (c) If the court does not order the appointment of a
> trustee under this section, then at any time before the
> confirmation of a plan, on request of a party in
> interest or the United States trustee, and after notice
> and a hearing, the court shall order the appointment of
> an examiner. . . if –
>> (1) such appointment is in the interests of
>> creditors, any equity security holders, and
>> other interests of the estate; or
>> (2) the debtor's fixed, liquidated, unsecured
>> debts, other than debts for goods, services,
>> or taxes, or owing to an insider, exceed
>> $5,000,000.

11 U.S.C. § 1104 (emphasis added).  Because the Debtors' Plan has

been confirmed, the Respondents assert that Alber's request for

appointment of a trustee or examiner must be denied.  The Court

agrees that such a remedy is unavailable based on the express

language of the Code.

## 4.    Appointment of Equity Committee and Counsel

Alber also seeks the appointment of an equity committee and

counsel to permit him to continue to investigate this case.  The

Court concludes that such a request is not warranted.  Though

section 1102(a)(2) authorizes the Court to order the appointment
of additional committees of creditors or equity security holders,
it may do so only "if necessary to assure adequate
representation" of those parties.  In this case there is no
necessity to appoint a committee for equity security holders
because their interests have been extinguished by the Debtors'
Plan and they will receive nothing from the estate.  (<u>See</u> Plan at
§§ 4.10.2 & 7.1(b).)  <u>See, e.g.</u>, <u>In re Kalvar Microfilm, Inc.</u>,
195 B.R. 599, 601 (Bankr. D. Del. 1996) (denying appointment of
equity committee where request was made after plan and disclosure
statement were filed).  Therefore, the Court will deny the
request for appointment of an equity committee and counsel
because it will provide no benefit to the estate and is simply
too late.

> 5.  <u>Bad Faith</u>

The Respondents assert that the Motions were filed in bad
faith.  Specifically, Gold asserts that the CLI Motion was filed
in response to the Plan Administrator's objection to CLI's claim.
Gold argues that CLI's Motion was filed to gain leverage in that
contested matter.

MNAT argues that Alber's request for relief is "a strategic
ploy" to improve his position under the established liquidation
scheme.  MNAT states that Alber has made it clear that he would

like the Debtors' shareholders to gain control of the Reorganized Debtor. MNAT notes further that Alber faxed the Motion to the firm within hours after he was served with the Reorganized Debtor's objection to Alber's Motions to disqualify TBF and Gold.

Even if the Motions were filed in bad faith, however, they raise serious questions about the disclosure of conflicts and connections made by both counsel for the Debtors and for the Committee in this chapter 11 case. Disclosure "goes to the heart of the integrity of the bankruptcy system." In re B.E.S. Concrete Prods., Inc., 93 B.R. 228, 236 (Bankr. E.D. Ca. 1988). Therefore, the Court is compelled to address the merits of the Motions.

### 6.   Exculpations

The Respondents assert that the allegations regarding their activities prior to confirmation of the Debtors' Plan are barred by the exculpations they received under the Plan. The Plan provided releases to Gold, MNAT and TBF for "any act taken or omission occurring on or after the Petition Date in connection with or related to the Debtors, the Plan Administrator or the Chapter 11 Cases . . . except for acts constituting willful misconduct or gross negligence." (See Plan at § 7.2(e).) This provision is consistent with Third Circuit authority. See, e.g., In re United Artists Theatre Co., 315 F.3d 217, 230 (3d Cir.

12

2003) (holding that indemnification provision in retention
application of professional which excludes gross negligence and
willful misconduct is consistent with professional's fiduciary
duty to the estate under the Bankruptcy Code and Delaware law);
In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000)
(holding that release in plan of committee's professionals from
liability for acts other than gross negligence or willful
misconduct is consistent with the Bankruptcy Code).

     The allegations in Alber's Motions are, however, that the
parties had actual conflicts of interest which they knowingly
failed to disclose at the time of their retention and throughout
the case.  If this is true, the Court concludes that the
exculpation clause would not protect the Respondents because it
constitutes willful misconduct.  Therefore, the Court concludes
that the releases do not preclude Alber from pressing his
Motions.

                    7.    Timeliness of Motions

     MNAT asserts that, even absent a finding that Alber has
brought the Motions in bad faith, Alber's right to obtain relief
is time-barred under Rule 60(b).  Rule 60(b) allows the Court to
revoke or modify earlier orders and provides, in relevant part:

          On motion and upon such terms as are just, the court
          may relieve a party . . . from a final judgement . . .
          [or] order. . . for the following reasons: (1) mistake,

                              13

inadvertence, surprise or excusable neglect; (2) newly
discovered evidence which by due diligence could not
have been discovered in time to move for a new trial
under Rule 59(b); (3) fraud . . . misrepresentation, or
other misconduct of an adverse party . . . or (6) any
other reason justifying relief from the operation of
the judgment.  The motion shall be made within a
reasonable time, and for reasons (1), (2), and (3) not
more than one year after the judgment . . . [or] order
. . . was entered or taken.

Fed. R. Civ. P. 60(b).

MNAT claims that sections (1), (2) or (3) are the only
conceivable bases under which Alber could seek relief, which
limits the time for bringing the motion to one year.  MNAT notes
that the Orders from which the Motions seek relief were all
entered more than one year ago.  Therefore, MNAT asserts that
relief is simply not available to Alber under Rule 60(b).

While MNAT is correct that Alber could have been entitled to
relief from the Orders under sections (1), (2) and (3) of Rule
60(b), Rule 60(b)(6) allows a court to reconsider an order for
"any other reason justifying relief from the operation of the
[order]."  Fed. R. Civ. P. 60(b)(6).  "To justify relief under
subsection (6), a party must either show some 'other reason'
justifying relief outside of the earlier clauses of the Rule, or,
if the reasons for seeking relief could have been considered in
an earlier motion under another subsection of the rule, [he] must
show 'extraordinary circumstances' suggesting the party is

faultless in the delay." <u>In re Benjamin's-Arnolds, Inc.</u>, No. 4-90-6127, 1997 WL 86463, at *10 (Bankr. D. Minn. Feb 28, 1997).

Such "extraordinary circumstances" are present in this case. If the professionals did not disclose their conflicts or other connections with others in the case to the Court, or did so in ways that clearly contravened the statutory requirements, then parties did not have sufficient notice to seek relief under Rule 60(b)(1), (2) or (3) within the prescribed one-year time limit. In fact, many of the relationships were revealed only in response to Alber's Motion.

Furthermore, the disclosure obligation mandated by the Bankruptcy Code and Rules "implicates a public policy interest justifying relief . . . under Rule 60(b)(6)." <u>In re Southmark Corp.</u>, 181 B.R. 291, 295 (Bankr. N.D. Tex. 1995) (granting relief under Rule 60(b)(6) from final fee order which had been entered nearly three years earlier). <u>See also</u> <u>Hazel-Atlas Glass Co. v. Hartford Empire Co.</u>, 322 U.S. 238, 244-45 (1944) (holding that fraud upon the court equitably tolls the time for seeking to set aside a judgment or order); <u>Pearson v. First NH Mort. Corp.</u>, 200 F.3d 30, 35-41 (1st Cir. 1999) (holding that attorney's false disclosure which denied any connection with creditors could support a finding that attorney had committed a fraud on the court); <u>Benjamin's-Arnold</u>, 1997 WL 86463, at *10 (holding that

"the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient 'extraordinary circumstances' to justify relief under Rule 60(b)(6). To hold otherwise would only serve to penalize the [Plaintiff] for delay that was beyond his control and to reward conflicted attorneys for failing to disclose their conflicts beyond the one-year period.").

In this case it is alleged that the professionals did not disclose conflicts of interest that would have barred their retention. If this is true, it would constitute a fraud on the Court warranting relief even though more than a year has passed since the professionals were retained and their fees approved. Therefore, the Court concludes that Rule 60(b)(6) allows the Court to consider Alber's Motions.

### B.    MNAT and its Partners

Alber seeks an order disqualifying MNAT from serving as counsel to the Debtors and disgorgement of all fees earned by MNAT and its partners who worked on the case. The basis of his Motion is that MNAT failed to disclose in its retention application that it had a conflict of interest because it was concurrently representing the Goldman Affiliates and GECC in the Finova case. GECC was a creditor in this case and the Debtors had claims against Goldman (including litigation that is

16

currently being prosecuted by the PEDC).

MNAT opposes the Motion arguing that: (1) it made "timely, adequate and candid" disclosures of its connections to the Goldman Affiliates in full compliance with the requirements of Bankruptcy Rule 2014; (2) the late supplemental disclosure of its connection to GECC was the result of "an inadvertent oversight"; and (3) its representation of the Debtors in the case was consistent with section 327(a) of the Code.

### 1.    Disinterestedness and Adverse Interests

Section 327(a) of the Bankruptcy Code governs a debtor's employment of attorneys in a bankruptcy case.  It provides, in relevant part:

> The [debtor], with the court's approval, may employ one
> or more attorneys . . . that do not hold or represent
> an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the
> [debtor] in carrying out [its] duties under this title.

11 U.S.C. § 327(a).

Thus, counsel for a debtor must not hold or represent an interest adverse to the estate.  An adverse interest is generally defined to mean "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant."  TWI Int'l v. Vanguard Oil Serv. Co., 162 B.R. 672, 675 (S.D.N.Y. 1987).  See also, In re National Liquidators, Inc.,

17

182 B.R. 186, 192 (S.D. Ohio 1995).

Further, under section 327 of the Code, counsel for the debtor must also be "disinterested." Disinterestedness is defined to mean that counsel "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason." 11 U.S.C. § 101(14)(E). See also, TWI Int'l, 162 B.R. at 675.

### 2. Disclosure Requirements

Bankruptcy Rule 2014 provides the mechanism for enforcing the provisions of section 327(a) by requiring disclosure of the attorney's relationships with parties in interest in the case. Rule 2014 requires that an application to retain counsel for the debtor:

> be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other parties in interest, [and] their respective attorneys and accountants.

Fed. R. Bankr. P. 2014(a).

Disclosure "goes to the heart of the integrity of the bankruptcy system." B.E.S. Concrete, 93 B.R. at 236. Therefore, the duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an

attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate. See, e.g., In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). See generally 9 Collier on Bankruptcy ¶ 2014.03 (15th ed. 2004). The bankruptcy court must be given timely and complete disclosure by the debtor's attorney of all connections with parties in interest in the case to "exercise its own ongoing affirmative responsibility 'to root out impermissible conflicts of interest' under Bankruptcy Code §§ 327(a) and 328(c)." Rome v. Braunstein, 19 F.3d 54, 58 (1st Cir. 1994). See also, In re BH & P, Inc., 949 F.2d 1300, 1315 (3d Cir. 1991).

Consequently, Bankruptcy Rule 2014 requires that the attorney seeking employment disclose to the Court all connections with parties in interest in the case, rather than furnishing only those which appear to implicate "disinterestedness" or "adverse interest" concerns under section 327(a). See, e.g., In re Filene's Basement, Inc., 239 B.R. 850, 856 (Bankr. D. Mass. 1999) (holding that the requirements of Bankruptcy Rule 2014 "transcend those of § 327(a), as they mandate disclosure of all connections with the [applicant] rather than being limited to those which deal with disinterestedness.").

19

Furthermore, the duty to disclose is ongoing.  Local Rule 2014-1 provides: "Promptly after learning any additional material information relating to [its] employment (such as potential or actual conflicts of interest), the professional employed or to be employed shall file and serve a supplemental affidavit setting forth the additional information."  Del. R. Bankr. P. 2014-1. See also, Rome, 19 F.3d at 57-58 ("[A]s the bankruptcy court is invested with ample power to deter inappropriate influences upon the undivided loyalty of court-appointed professionals throughout their tenure, the need for professional self-scrutiny and avoidance of conflicts of interest does not end upon appointment.") (emphasis in original); In re Tinley Plaza Assocs., L.P., 142 B.R. 272, 278 (Bankr. N.D. Ill. 1992) ("[T]he duty to disclose continues beyond the initial stage of application to employ counsel. . . .  If a conflict arises after attorneys are employed by the debtor-in-possession, such conflict must be disclosed to the court and the court must immediately disqualify the attorney.") (citations omitted).

"So important is the duty of disclosure that the failure to disclose relevant connections is an independent basis for the disallowance of fees." Leslie Fay, 175 B.R. at 533.  See also, Rome, 19 F.3d at 59 ("Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed. R. Bankr. P.

20