not have to be strictly proportional to the severity of a given party's violations.").

Consideration of all these factors convinces the Court that approval of the Settlement is appropriate in this case.  There is a strong probability that the UST will succeed in part on its Disgorgement Motion.  TBF has admitted its failure to disclose its relationship with Gold.  As discussed above, TBF vehemently disputes that the relationship with Gold ever constituted an actual conflict.  Therefore, the Court concludes that there is a risk to both sides if this issue is litigated.

There is no suggestion that there will be any difficulty in collecting any judgment which the UST may obtain on its Disgorgement Motion.  TBF is an established bankruptcy firm.  It is aware that its failure to obey a court order of disgorgement in a bankruptcy case would have serious effects on its ability to practice in this Court or any other Bankruptcy Court in the future.

While the litigation is complex, the settlement will not save any expenses because Alber's Motion is virtually identical to the Disgorgement Motion.  Discovery has been conducted and a full hearing has been held on Alber's Motion.  Therefore, no savings are attendant to approval of the Settlement.

The paramount interests of creditors are served by approval of the Settlement, because the Court finds that it is a reasonable penalty for the transgression committed by TBF.

The Settlement also furthers the deterrent goal of a sanctions motion. The Court is convinced that the ordeal of defending the Alber Motion, coupled with the significant repayment of fees earned, will cause TBF to assiduously follow the disclosure requirements of the Code and Rules in the future. The settlement also serves as a "lighthouse" to others warning them to avoid the "rocks" of non-disclosure.

Consequently, the Court will grant the UST Motion for approval of the Settlement with TBF and will deny the Alber Motion to the extent it seeks to impose any additional penalty on TBF.

D. Barry Gold

Alber also alleges that Gold should be disqualified and ordered to disgorge all fees received in this case because of his undisclosed relationship with TBF, ADA and Traub. Alber asserts that Gold: (1) had numerous conflicts of interest; (2) breached his duty of loyalty to the Debtors; (3) violated section 327(a) and Bankruptcy Rule 2014; (4) committed perjury and other bankruptcy crimes; and (5) wasted estate assets. Gold denies all of the allegations.

42

## 1.   Conflicts of Interest

Alber alleges that Gold had numerous conflicts of interest which should have prevented him from serving as the Debtors' CEO and president.   Alber asserts that the relationships among TBF, Traub, Gold and ADA constituted an actual conflict of interest that had to be disclosed and would have disqualified Gold from being retained by the Debtors.

Gold acknowledged that he has a relationship with counsel for the Committee but denies that it was a disabling conflict of interest.   Gold argues specifically that his relationships with ADA, TBF and Traub did not create a conflict of interest.   He was hired by the Debtors in this case, ADA was not.   Therefore, Gold asserts that there was no conflict to be disclosed.

Gold seeks to distinguish this case from the Coram case.   In re Coram Healthcare Corp., 271 B.R. 228, 236 (Bankr. D. Del. 2001).   In Coram, the debtor's CEO had a written consulting agreement with one of the largest creditors by which he was paid $1 million in consulting fees.   Though the CEO insisted that the relationship was unrelated to the bankruptcy case, there was little evidence of what the CEO did to earn the fee, other than his work for the debtor.   Further, there was significant evidence that the CEO caused the debtor to take actions favorable to the

creditor that were not in the best interest of the debtor.[9]

The Court agrees that this case is distinguishable from the Coram case. The business relationship between Gold and Traub involved the split of profits from ADA. ADA earned its fees from work performed by Gold and/or Traub when it was retained in bankruptcy cases. Therefore, unlike the contract in Coram, Gold was not receiving compensation from Traub simply for "consulting" with him or otherwise doing his bidding. Gold earned compensation from ADA for work performed by ADA.

Further, Gold's business relationship is with a professional in the case, not with a creditor. ADA and Traub have no direct claim against the Debtors in this case and, therefore, there is less possibility that they will pressure Gold to promote their personal interests over the interests of other creditors in the case. In addition, TBF is acting as counsel for the Committee and has a fiduciary duty to all creditors. This is significantly different from acting as counsel for one individual creditor or group of creditors.

Furthermore, the instant case is a liquidation case where the interest of the Debtors and the creditors is the same: to

---

[9] An example is the payment of interest in cash to the noteholders immediately before the bankruptcy filing when the debtor was contractually required only to pay in kind by the issuance of new notes.

realize the maximum recovery from the Debtors' assets.   In

contrast, Coram was a reorganization case where the creditors and

shareholders disagreed over the enterprise value and, therefore,

what recovery shareholders should receive.

The parties did, however, acknowledge that Gold was working

as a consultant to TBF on two cases at the time he was hired by

the Debtors.   That relationship, together with the fact that Gold

was being paid $30,000 per month by TBF (albeit on behalf of

ADA), does create at a minimum a potential conflict of interest.

Given Gold's extensive business relationship with TBF, his

loyalty to the Debtors could be questioned.

## 2.    Breach of Loyalty

Alber asserts that Gold's relationship with Traub (and

failure to disclose that relationship) constituted a breach of

Gold's duty of loyalty to the Debtors.   Gold denies that he had

any disqualifying conflict of interest which he was required to

disclose.

Under Delaware law "[c]orporate officers and directors are

not permitted to use their position of trust and confidence to

further their private interests. . . . and stand in a fiduciary

relation to the corporation and its stockholders."   Guth v. Loft,

Inc., 5 A.2d 503, 510 (Del. 1939).   The duty of loyalty "requires

an undivided and unselfish loyalty to the corporation [and]

45

demands that there shall be no conflict between duty and self-interest."  Id.

In the instant case, there was a potential conflict between Gold's position as president and CEO of the Debtors and his business relationships with counsel for the Committee.  "When faced with such divided loyalties, directors [and officers] have the burden of establishing the entire fairness of the transaction to survive careful scrutiny by the courts."  Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del. 1989).  The duty of loyalty is usually tested in cases where an officer or director has an interest in a party involved in a sale transaction with his company.  In that context, courts focus on "fair dealing and fair price" in determining the entire fairness of the transaction.  Id.

In this case, there was no transaction between the Debtors and ADA.  Therefore, the Court need not determine if the dealings between the two were fair and for a fair price.  Gold's position as a partner at ADA did not constitute a breach of his duty of loyalty to the Debtors under Delaware law.  Nor is there any other evidence that Gold's other relationships with TBF and Traub caused him to violate his duty of loyalty to the Debtors.  Consequently, the Court concludes that no breach has been established.

3.    Section 327 and Bankruptcy Rule 2014

Alber asserts that, because of his conflict of interest, Gold also violated section 327 and Bankruptcy Rule 2014 by failing to disclose his relationships with TBF, Traub and ADA at the time he was hired by the Debtors.

Gold argues that he is not required to comply with section 327(a) or Bankruptcy Rule 2014 because he was hired as an employee of the Debtor and is not a professional as that term is used in section 327(a).  See, e.g., In re All Seasons Indus., Inc., 121 B.R. 822, 825 (Bankr. N.D. Ind. 1990) (concluding that section 327(a) could not apply to officers, because it would result in wholesale removal of all pre-petition officers who are insiders and not disinterested); In re Phoenix Steel Corp., 110 B.R. 141, 142 (Bankr. D. Del. 1989) (holding that officers employed by debtor pre-petition could continue to be employed post-petition under section 327(b) without court approval); In re Midland Capital Corp., 82 B.R. 233, 239 n.10 (Bankr. S.D.N.Y. 1989) ("Executive officers are simply not 'professional persons'.").  See generally, Collier on Bankruptcy § 327.02[6][c] (15th ed. rev.) (stating that the correct analysis is that executives of the debtor are not professionals whose employment is subject to approval under section 327(a)).

Alber asserts, however, that Gold should have known that his relationship with ADA and Traub was inappropriate and should be disclosed because of his experience in the Bonus Stores case. That case, however, is distinguishable.

In Bonus Stores, the Debtor sought to retain both TBF and ADA (not Gold) as professionals under section 327(a). The Court denied the ADA application and permitted retention of TBF as special counsel only. That denial was not predicated on the relationship among TBF, Traub, Gold and ADA.[10]  Instead, it was because ADA and TBF had performed pre-petition services for the debtor's secured creditor in connection with the debtor.  The Court found that their representation of a creditor in matters relating to the debtor was a direct conflict of interest precluding their retention by the debtor under section 327(a).

In this case, ADA was not retained by the Debtors; Gold was. In addition, there is no evidence in this case that Gold ever represented any creditor of the Debtors in dealings with the Debtors.  Thus, the facts of this case are distinguishable from Bonus Stores.

There are courts, however, which have held that the retention and/or the compensation of the debtor's executives must

_____

[10]  There could have been an issue of improper fee-sharing in that case had both ADA and TBF been retained.  See 11 U.S.C. § 504(a). Because ADA was not retained, the issue was moot.

be approved by the bankruptcy court.  See, e.g., In re The Crouse
Group, Inc., 75 B.R. 553 (Bankr. E.D. Pa. 1987) (holding that,
although compensation of debtor's officers is subject to court
scrutiny, disqualification under section 327 is not automatic
because of lack of disinterestedness); In re Zerodec Mega Corp.,
39 B.R. 932, 935 (Bankr. E.D. Pa. 1984) (holding that employment
of officers and their compensation are subject to bankruptcy
court approval because "the statutory framework established by §§
327 and 328 provides an express treatment of the subject of
employment [of officers] with the requisite safeguards and
restrictions.") and cases cited therein.  See generally, 5
Collier on Bankruptcy § 1107.03 (15th ed. 1983) (stating that
section 1107 permits employment of officers under section 327(a)
even though they had been employed by the debtor pre-petition).

     Even the courts which hold that section 327(a) does not
apply conclude that they have authority to review the
compensation paid to officers for reasonableness.  See, e.g.,
Phoenix Steel, 110 B.R. at 142-43 (holding that compensation of
debtor's officers is subject to section 330 review by court);
Midland Capital, 82 B.R. at 238 (concluding that compensation of
officers is subject to review for reasonableness under section
503(b)(1)(A)).

The Court agrees with those courts that conclude that an officer is not a professional who needs to be retained by the debtor under section 327(a).  Nonetheless, the Court does have the power to supervise and deny compensation to officers of a debtor in appropriate circumstances.  The extent of relationships that might affect an officer's loyalty (and the failure to disclose those relationships) are factors that the Court should consider in supervising officers of the debtor.  In order to properly exercise such a role, as well as to permit other parties in interest to evaluate the officer, the disclosure of relationships that an officer may have with creditors, professionals, and other parties in interest in the case is necessary.  If officers do not have to disclose conflicts of interest, the Court would not be able to evaluate the reasonableness of the compensation being paid to the officer or prevent improper conduct.  The facts of this case, as well as others, convince the Court that without a disclosure requirement much mischief can occur.  Coram, 271 B.R. at 236.

In this case, Gold acknowledges that he failed to disclose to the Debtors, their counsel or any other party his relationship with TBF, Traub and ADA at the time he was hired by the Debtors. Unlike TBF and MNAT, as an officer of the Debtors Gold was not required at the time to disclose that relationship.  In the

50

future, however, the failure of an officer of a debtor to disclose such relationships will subject that officer to review and possible disgorgement of compensation if the Court concludes that the relationship constitutes an actual conflict of interest.

In this case, the Court concludes, upon review of the relationships among Gold, TBF, Traub and ADA, that the evidence fails to establish any actual conflict of interest held by Gold that caused any harm to the estate. Therefore, the Court concludes that there is no basis to reduce Gold's compensation or otherwise sanction him under the general equitable concepts of the Bankruptcy Code.

### 4. Perjury and Bankruptcy Crimes

Alber asserts that Gold committed perjury and other bankruptcy crimes. Among the other "crimes" Alber asserts Gold committed are obstruction of justice, bankruptcy fraud, concealment of assets, false oaths and claims, and bribery. Absolutely no evidence of any of these purported crimes was, however, adduced at trial.

The essence of Alber's allegations is that Gold failed to disclose his relationship with ADA, Traub, and TBF in his retention application and in the biography he submitted in connection with his retention as Plan Administrator. As noted above, no rule existed at that time requiring an officer of the

51

debtor to disclose any relationship in a case.  Therefore, the
failure to disclose cannot be considered perjury or any other
bankruptcy crime.  Consequently, the Court finds no reason to
refer this matter to the U.S. Attorney.

### 5.    Waste of Estate Assets

Alber asserts that Gold wasted assets of the estate by
preparing a form 10k which the Debtors never filed with the SEC.
Gold testified that work was done on the 10k because the SEC
denied the Debtors' request for exemption.  Ultimately, however,
the 10k was never filed because it was determined after
consultation with counsel that the SEC filing requirements could
be satisfied by filing the Debtors' monthly operating reports
under an 8k rather than finishing the costly task of filing the
10k.  Gold testified that the work on the 10k was used in other
filings and was not a waste.

The Court does not fault Gold for having taken the
precaution of doing preliminary work on the 10k until it could be
clarified whether the filing would be required.  Further, Gold
was on salary so there was no additional expenditure by the
estate for that work.  Nor is there any suggestion that Gold
failed to perform other necessary tasks because of it.  In fact,
Gold points to the efforts he has expended in this case which has
resulted in a 16% recovery for general unsecured creditors, when

it was originally estimated that they would receive only 10%.
Gold asserts that his efforts in maximizing value for creditors
belies any suggestion that he was conflicted, failed to fulfill
his fiduciary duties, or wasted assets of the estate.  The Court
agrees that Alber has failed to establish any basis for his
allegation that estate assets have been wasted.

Alber does raise, in his post-trial submission,[11] that Gold
has failed to adequately represent the interests of the estate by
allowing the Debtors' corporate registration to lapse in May
2002.  This was apparently occasioned by the resignation of the
Debtors' agent, without notice to the Debtors.

Even if this occurred through negligence of the Debtors or
Gold, however, the Court concludes that there has been no harm to
the estate.  The Debtors in this case are liquidating.  Under
Delaware law, a dissolved company "remains a viable entity
authorized to possess property as well as sue and be sued
incident to the winding up of its affairs."  City Investing Co.
Liquidating Trust v. Continental Cas. Co., 624 A.2d 1191, 1195
(Del. 1993).  See also Del. Code Ann. tit. 8, § 278 (2004)
(providing an automatic three year extension of corporate
existence after dissolution, which may be extended for any

---

[11]  This is one example of pleadings filed by Alber alleging
wrongdoing without presenting any evidence of it at the hearing.
The Court has entered Orders striking similar submissions.

purpose relating to litigation and the winding up of its
affairs).  Consequently, even if the Debtors had been dissolved
under Delaware law they are authorized to continue to perform all
things necessary to finish liquidating the estate and paying
creditors.  Thus, there is no basis to conclude that Gold has not
performed appropriately in this case.

For the reasons stated above, the Court concludes that Gold
had a potential conflict of interest that should have been
disclosed at the time of his retention.  Because there is no
evidence that an actual conflict of interest arose or that any
harm occurred as a result of the potential conflict of interest,
the Court concludes that no reduction in Gold's compensation is
warranted.   The Court further does not find that Gold committed
any bankruptcy crime or wasted assets of the estate.  Therefore,
it will deny Alber's Motion as to Gold.

### E.   Goldman Settlement

As noted above, the Committee has reached a settlement with
Goldman by which Goldman will remit an additional $200,000 to
settle the request for return of the success fee and expenses
paid pre-petition.  Alber objects to the settlement asserting (1)
that a member of the Committee had an actual conflict of interest
at the time the Goldman settlement was approved and (2) that the
estate has other claims against Goldman.

Despite Alber's allegations, the evidence presented at trial established that there was no conflict on interest.  Alber asserted that one of the members of the Committee (and later the PEDC), R.R. Donnelly & Sons Co. ("Donnelly"), had two Goldman directors on its board of directors at the time the Committee approved the Goldman settlement.  In fact, the affiliation was with GS Capital Partners, an entity which has no relationship or connection with Goldman.  Further, Donnelly was not even a member of the PEDC at the time the Goldman settlement was approved. Donnelly left the Committee, not because of any conflict, but because the individuals serving on the PEDC for Donnelly left its employ.

Further, the Settlement with Goldman does not contain a general release.  Therefore, approval of it will have no adverse effect on the action brought by the PEDC against Goldman and others for damages resulting from the failed IPO.

There being no other objections and the Court being convinced that the Goldman settlement is in the best interest of the estate, it will approve the Goldman settlement.


IV.  CONCLUSION

For the reasons stated above, the Court will grant, in part, Alber's Motion to disqualify and for disgorgement of fees from

MNAT and require the repayment of all fees earned for services rendered in connection with the Goldman and GECC matters.  The Court will grant the UST's Motion for approval of the Settlement with TBF and will deny Alber's Motion for sanctions against TBF to the extent it seeks any further relief from TBF.  The Court will deny Alber's motion for sanctions and other relief against Gold.  Finally, the Court will approve the Goldman settlement.

An appropriate Order is attached.

BY THE COURT:

Dated: October 4, 2005

Mary F. Walrath
United States Bankruptcy Judge

56