# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X

In re:                                              :
                                                    :
                                                    :          Chapter 11
                                                    :
ETOYS, INC.,  et al,                                :          Case Nos. 01-0706
                                                    :          Through  01-0709
                                                    :          Jointly Administered
        Confirmed Debtors                           :
---------------------------------------------------------X
                                                    :
STEVEN HAAS, et al                                  :
                                                    :
        Appellant,                                  :
                                                    :
        v.                                          :          Civil Action No. 05-728
                                                    :
ETOYS, INC. AND POST-EFFECTIVE DATE :
COMMITTEE OF UNSECURED CREDITORS, :
TRAUB BONACQUIST & FOX, MORRIS        :
NICHOLS ARSHT & TUNNEL,                      :
BARRY GOLD, FREDRICK ROSNER            :
                                                    :
        Appellees                                   :

## BRIEF PER COURT'S SCHEDULING ORDER ON PEDC MOTION
## TO DISMISS STEVEN HAAS, BY STEVEN HAAS; SOLE
## SHAREHOLDER OF COLLATERAL LOGISTICS, INC.

Upon the Court directing both Steven Haas and the Post Effective Date

Committee (the "PEDC") to participate in a conference call to answer to the Court the

failure of both parties to participate in the "mandatory mediation" Ordered by this Court

the Court did Order to grant a Motion to Stay Appeal pending the PEDC motion to

dismiss Steven Haas who is President of Collateral Logistics, Inc. ("CLI") the sole Court

appointed liquidator in eToys Bankruptcy Case 01-706 (the "DEBTOR").

## PRELIMINARY STATEMENT

The PEDC has graciously sent to the this District Court and by email (after His Honor had a teleconference of parties on the failure to comply with "mandatory mediation") to appellant, as support to the Motion to Dismiss appellant items that includes Her Honor Walrath's Opinion & Order of Sanctions of the Attorney for the Creditors, Traub Bonacquist & Fox in the eToys case 01-706 Fed. Dist. Wilmington DE Bankr. Jointly administrated. Therefore this appellant respectfully requests that the Court first read the Opinion which gives "detailed" insight into the "subterfuge" that has occurred to understand why this appellant is in fear of his well being. Furthermore said Opinion states "facts" that are not in dispute, which will conserve the Court's time.

So appellant would like to submit the support documents of the PEDC, specifically Her Honor Walrath's Opinion of October 4, 2005 as EXHIBIT 1 and Her Honor's coinciding Order of October 4, 2005 as EXHIBIT 2.

Additionally there are the Affidavits of the former Chairman of the Creditors Committee in the eToys Estate which give testimony to the fact of how the contracts were designed, whom by, how and the intent of the hiring's and the Haas Affidavit which the PEDC and the collective adversary parties thereof contends is a "waiver". Wherefore appellant now submits the Chairman's Affidavits as EXHIBIT 3, EXHIBIT 4, EXHIBIT 5, respectively as to timelines.

## LIST OF THE PLAYERS

Upon the review of the Bankr. Dist Opinion of Oct 4, 2005 the parties involved are now detailed, which appellant hereby lists as follows:

A)      Traub Bonacquist & Fox ("TBF") the Court approved Counsel for the Creditors Committee.

B)      Morris Nichols Arsht & Tunnel ("MNAT") the Counsel for the Estate of eToys 01-706 whose primary office is in Wilmington DE.

C)      The eToys Estate 01-706 (the "DEBTOR").

D)      The Post Effective Date Committee (the "PEDC")

E)      Fred Rosner, who is currently with the firm of Jaspen Schlesinger as local counsel for the PEDC (Mr. Rosner has moved to 3 different firms during this case, the case has always traveled with him.)

F)      Barry Fredrick Gold who came on board the Debtor "post petition" as first "wind down coordinator" then CEO and President in mid 2001.

G)      Asset Disposition Advisors ("ADA") which is a company that is co-owned by Paul Traub of TBF and Barry Gold.

H)      Mark Kenney is the appointed "watchdog" per the Janet Reno Reform Act of 1994, by the US Trustee Dept where Mark Kenney is the "counsel" for the US Trustee.

I)      Lee Castillo, the former Chairman of the Creditors Committee.

J)      Ellen Gordon of Crossroads, LLC (where Crossroads is the Court appointed financial consultant to the DEBTOR)

K)      Richard Cartoon who was the financial Consultant to the Creditors and subsequently appointed as financial Consultant for overseas interest of the DEBTOR.

LISTING OF FACTS THAT APPELLANT TESTIFIES TO UNDER OATH

M)    The former Chairman of the Creditors Committee hired appellant to assist in a liquidation that had gone haywire. (the DEBTOR had agreed to double every employee's pay and there were auctions set up to sell all assets for pennies on a dollar where KB Toys had told the public (WSJ article of 2001) that it had acquired substantially all of the assets for $5.4 million.

N)    Appellant halted the auction process, assisted in pushing KB Toy purchase of the assets north of $9 million and reduced the 1000 employee's to appellants crew and the DEBTOR maintained what was necessary for "wind down"!

O)    Barry Gold signed a Declaration "under penalty of perjury" that the Plan was drafted in "good faith" "arms length" negotiations between DEBTOR and creditors. Where Barry Gold and Paul Traub of TBF have admitted that TBF paid Barry Gold 4 separate payments of $30,000 in early 2001, before TBF placed Barry Gold in as "wind down coordinator" and CEO of the DEBTOR. That this was done without disclosure.

P)    That Barry Gold and TBF both admit that they worked for Stage Stores, Inc. That Barry Gold has stated that Jack Bush was the party that handed him assignments of Stage Stores, Jumbo Sports and others.

Q)    That Jack Bush is an EXEC of IdeaForest, which is a Bain entity.

R)    That Mitt Romney owned Bain and interest in Stage Stores at the time that Barry Gold & TBF worked there.

S)    That Michael Glazer is CEO of KB Toys.

T)    That Michael Glazer was, and is still part of Stage Stores.

U)    That Bain was the owner of KB Toys when Barry Gold & TBF negotiated

the sale of the DEBTORS assets to KB & Bain.

V)      That Stage Stores Inc is also co-debtor with and of Liquidity Solutions.

W)      That Liquidity Solutions has bought extensive claims in the DEBTORS ESTATE.

X)      That the PLAN of the DEBTOR Estate that was drafted by TBF & Barry Gold by "good faith" "arms length" negotiations between DEBTOR and creditor (between Barry Gold and TBF) – contains a clause that allows the payment of claims etc, under $1 million without Court approval.

Y)      That Barry Gold was questioned, Pre Plan about his connection with Luria & Sons and TBF and TBF, Barry Gold, MNAT, Fred Rosner and Mark Kenney remained silent and allowed the Plan to be confirmed under the false pretense of "good faith".

Z)      That this case has over 50 felony convictions available to assure justice, including, but not limited to the Janet Reno Reform Act of 1994 USC 155 Fee Fixing. Where TBF has admitted that TBF paid Barry Gold 4 separate payments of $30,000 each prior to placing Barry Gold in, without disclosure, as "wind down coordinator" then CEO and President of the DEBTOR., that the payments stopped once Barry Gold was within the ESTATE , which is benefit to TBF of no longer having to pay the $30,000 per month. That TBF negotiated the payment of Barry Gold, along with MNAT and Fred Rosner, among others and Barry Gold received $40,000 per month initially, which is benefit to Barry Gold. The final nail of such felony is the requirement(s) that it be of an Estate in Bankruptcy and that it be willful.  Whereas we have Barry Gold's hiring letter that shows MNAT, TBF and others drafted such (no one will admit who personally drafted, we just have testimony that "they" knew) which gives Barry Gold "willful" "volition" of his own

to seek employment approval of the Court. Barry Gold has testified that he disclosed the TBF relationship in every other case but the DEBTORS. Barry Gold has also testified that he has 38 years of experience in liquidations, bankruptcies, turnarounds and retail sales.

## ITEMS OF DISCUSSION ON DEFENSE OF PEDC MOTION TO DISMISS

1.     I, Steven Haas, this day remains to be, since the inception and formation, the sole 100% stock holder, initiating party of formation, President and CEO of CLI.

2.     The Court, specifically Her Honor Chief Federal Judge Mary F. Walrath, in Wilmington Delaware Bankruptcy Court did hear allegations of "non disclosure", "conflicts", "perjury", "false oaths", "false declarations", "fraud", "conspiracy", "scheme to fix fees", "misprison", "disqualification", "sanctions" and more in the matter of the eToys Bankruptcy that was subsequently "taken under advisement" for a period greater than 5 months from the March 1st, 2005 hearing.

3.     On October 4th, 2005, Her Honor Walrath, after having taken such matters under advisement, did hand down an Opinion and Order in response to the Allegations that were initially substantiated by Steve Haas/CLI in November of 2004 with the Court entered Proof of the existence of a partnership that existed between Barry Gold, the Post Petition CEO and President of the DEBTOR and the firm of Traub Bonacquist & Fox ("TB&F") partner Paul Traub where TB&F is the counsel for the Official Creditors Committee. That partnership and resulting document became known to me through a former member of TB&F (just recently several attorneys from TB&F have moved to other law firms) where I was informed, during an incidental phone call, that Barry Gold and Paul Traub had a partner relationship. This relationship existed long and in detail

prior to eToys as it was related to me that Barry Gold did come around to celebrate successes when the Firm was formerly known as Traub Bonacquist & Yellen. The documents that prove that relationship are no longer in dispute, specifically the Asset Disposition Advisors, LLC ("ADA") Delaware Secretary of State's filing that was accepted as evidence by Her Honor Walrath in making her decision.

4.      That combined with the accepted evidence of the Pacer Court records of In re: Bonus Stores 02-12284 Trustee's objection to ADA along with In re: Homelife Corporation 01-2412 both of which are in the same Wilmington Delaware Federal District, supervised by the same Trustee Office(s) were enough foundation for Her Honor Walrath to Order that a) All parties alleged against are to respond by January 25th, 2005 (the "RESPONSES"), b) that a Hearing on the "allegations" was to occur on Feb 1st, 2005, c) which resulted in an additional hearing of March 1st, 2005 that Robert Alber (an eToys shareholder, equity holder) and I now understand to have been the evidentiary hearing.

5.      During that hearing Paul Traub, on the Stand, admitted to the Court that his firm did pay Barry Gold four (4) separate payments of $30,000 each month prior to Barry Gold becoming the "wind down coordinator" of eToys during May of 2001, and by pre-arrangement Barry Gold became CEO and President of eToys in June of 2001.

6.      Without understanding the massive amount of subterfuge and specious behavior of the parties a Court would regularly dismiss a "pro se", "pro per", "substituted party", "party of interest", "shareholder" and/or other person. As the Court, specifically the Federal System, relies upon the ethics of the Members & Officers of the Court to assure proper, ethical, jurisprudent adherence to the Code and Rules for the sanctity of the

Judicial Process.

7.    Therefore, I gladly come before this Court today with these "Facts" that I
do testify to "Under Penalty of Perjury" that my LIFE has been threatened, that I have
been offered "bribe(s)", "threat(s)" and demise of my business endeavors, physical well
being for failure to become part of the "good ole boys club"!

## EXCERPT OF OPINION OF OCT 4th, 2005, THAT IS
## PARAMOUNT OF THIS PLEADING AND BRIEF

8.    On pages 15 & 16 of the Opinion that has been supplied to this Court by
the PEDC it contains the following application of Fed Rule of Civ Proc 60(b) (6). Where
it quotes "In re: Southmark Corp., 181 B.R. 291, 295 (Bankr. N. D. Tex. 1995) (granting
relief under Rule 60(b)(6) from final fee order which had been entered nearly three years
earlier). See Also Hazel-Atlas Glass Co. v. Hartford Empire Co.,  322 U.S. 238, 244-45
(1944) (holding that fraud upon the Court equitably tolls the time for seeking to set aside
a judgment or order); Pearson v. First NH Mort. Corp., 200 F. 3d 30, 35-41 (1st Cir. 1999)
(holding that attorney's false disclosure which denied any connection with creditors could
support a finding that attorney had committed a FRAUD upon the Court);  Benjamin's-
Arnold 1997 WL 86463, at *10 (holding that "the failure of an attorney employed by the
estate to disclose a disqualifying conflict of interest, whether intentional or not,
constitutes sufficient "extraordinary circumstances" to justify relief under Rule 60(b)(6).
To hold otherwise would only serve to penalize the (Plaintiff) for delay that was beyond
his control and to reward conflicted attorneys for failing to disclose their conflicts beyond
the one-year period.")

9.     The excerpt that requires emphasis here is ----*holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient "extraordinary circumstances" to justify relief under Rule 60(b)(6). To hold otherwise would only serve <u>to penalize the (Plaintiff)</u> for delay that was beyond his control and <u>to reward conflicted attorneys</u> for failing to disclose their conflicts beyond the one-year period."*

## PROOF OF FRAUD IN THE EXTREME

10.     For I, Steve Haas, am the "sole" Court Appointed liquidator in the DEBTOR's Estate. Per the "nunc pro tunc" Orders that Mr. Rosner of the PEDC has supplied to this Court in his brief and the "Contracts" between the DEBTOR and CLI that were signed by Dave Gatto but drafted, written and submitted to the Court by TB&F, Fred Rosner and the DEBTOR's counsel Morris Nichols Arsht & Tunnel ("MNAT"). Where counsel(s) for the Creditors and DEBTOR, along with Barry Gold, did discourage me from hiring Counsel as a cost saving measure to the ESTATE. The Former Chairman of the Creditors Committee Affidavit(s) (***Exhibits , &*** ) where he did hire both TB&F and me, which gives the history of the relationship by a third party that has vast experience in these matters, including vast experience as a Chairman of a Creditors Committee.

11.     My most naïve statement, now that you are aware of the relationship of Barry Gold and Paul Traub, is something I told Barry Gold when I first met him and was made aware of his becoming CEO and President {I did not ever hear of "wind-down coordinator" until the RESPONSES of January 25th, 2005, where Barry Gold did submit his hiring letter (***Exhibit*** ), which shows that it was drafted by party(s) while allowing "willful" choice to apply to the Court for hiring of his own "volition". To this date

neither MNAT, TB&F, Barry Gold or anyone else will admit who drafted the Barry Gold

hiring letter.} Regardless, I, in my naïve state, told Barry Gold that I had to do many

maneuvers to assure that TB&F would not assist the buyers as rumor had it that Paul

Traub was more an Attorney for Gordon Brothers and other liquidators than the Creditors

(as who could dare believe that the counsel for the Creditors Committee, who is a vastly

experienced, professional Bankruptcy Attorney, would deceive the Chairman of the

Creditors Committee (a person whom Paul Traub used to call his "Rabbi" out of

endearment for the vast amount of work the Chairman permitted him to engage in).

12.     Therefore I sealed my fate as I told Barry Gold that Paul Traub was a guy

that one could not trust. In not knowing their relationship existed, I allowed the check

and balance of Barry Gold v TB&F v Chairman of Creditors committee to keep integrity

in check to be corrupted.

13.     As tapes will show, Barry Gold negotiated the drafting points of my

contract, along with Susan Balaschak of the TB&F firm, while being physically at the

DEBTORS home office on Olympic Blvd. (the Kilroy Building) in California.

14.     Per California State Bar Standing Committee on Professional

Responsibility and Conduct with Formal Opinions, as in Evidence Code sections 917(b)

and 951, along with California State Bar Formal Opinion No. 2003-161 which

specifically states "the attorney-client relationship, with all of the duties attendant upon

that relationship-including confidentiality- "is created by contract, expressed or implied."

(id. At p. 3, citing Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) and Miller v.

Metzinger (1979) 91 Cal. App. 3d 31, 39-40 (154 Cal.Prtr.22). Noting that a relationship

exists when an attorney agrees to be consulted. Whereby we have this testimony under

oath, the Chairman's Affidavit(s), combined with the fact that the "nunc pro tunc" Orders for CLI specifically state that CLI is excused from 328 and that submission thereof will be done with "assistance of debtors counsel". Therefore the parties that discouraged my seeking counsel and doing the legal drafting and submission of the CLI contracts, along with my statement here today that is verified by the Chairman's Affidavit(s) that CLI was not the primary desired employee of the Creditors, rather I , Laser Steven Haas, was their choice, gives overwhelming support to the discussion that they (the PEDC, Barry Gold, MNAT, TB&F etc.) surely cannot be a witness against the party they represented.

15.    It is also worthwhile to note that the only item(s) other than the contracts to hire, that are submitted by TB&F, PEDC or DEBTORS counsel is the HAAS AFFIDAVIT of Nov 2001, also known as Docket number 816, that they collectively state is a waiver. Where I have always contended such is not a waiver as line 10 and 11 specifically state that CLI is entitled to success fees and expenses. So I offer as (*Exhibit* ) hereto the HAAS AFFIDAVIT and as (*Exhibit* ) a drafting that was done by Susan Balaschak of TB&F of a waiver, to show you that they know the form of a waiver, that I denied any waiver, and to give further evidence of "subterfuge".

SUBTERFUGE DISCUSSION

16.    Barry Gold and TB&F never disclosed their relationship, as is evidenced by Her Honor's October 4th, 2005, Opinion.

17.    Barry Gold, by his own hiring letter, response of January 25th, 2005, deposition of February 9th, 2005, and the hearings of October 16th, 2002, November 1st, 2002 (pre-plan), which are Transcripts in the record along with the Transcripts of February 1st, 2005 and March 1st, 2005, show premeditated forethought as the hiring letter

is drafted to allow Barry Gold "willful" circumvention of his own "volition" to not apply for Court approval. Yet Barry Gold in those same documents boasts of 38 years of experience in bankruptcies, liquidations, turnarounds, and retail management. We also have his and TB&F's testimony that they disclosed their relationship everywhere but eToys. We also have (***Exhibit*** ) attached hereto that is Ellen Gordon's billing statement eToys docket number 467 which shows a detailed history of discussions on hiring a replacement professional which mentions on page 38 thereof a phone call with D. Breeden, Ellen Gordon and the US Trustee office on the stand of "responsible person" implying that she had discussions with the US Trustee that Barry Gold must apply, while also giving further evidence that Barry Gold did apply where on the Crossroads billing docket of 467 on the Pacer public website it states that "Crossroads assisted with the recruitment of several key positions along with the anticipatory statement "Mr. Gold's employment is pending Court approval and contingent upon obtaining a D&O insurance policy". Furthermore the Trustee states in his Motion of February 15th, 2005, to sanction TB&F that it is --- hard to believe that the failure to disclose the Barry Gold / Paul Traub relationship was anything other than deliberate rather than inadvertent --- especially given the fact that the Trustee had given notice to all parties that any replacement officer of the DEBTOR had to be "arms length" of all parties involved (and Ian Hunter of Crossroads was denied for that very reason.). Additionally, Barry Gold was placed on the stand "Pre-Plan" confirmation and questioned by Robert K. Alber (an eToys shareholder) on a possible relationship with Paul Traub in the ESTATE of Luria & Sons. Where Barry Gold dodged the question, implied there was no relationship and that he and Paul Traub did not own any assets together therein. Where I now submit to you the TB&F

Supplemental Affidavit In re: Stage Stores 0035078-H2-11 where there is an abundance

of evidence of "Fraud", "Collusion" and "Conspiracy" as the TB&F Affidavit therein

gives evidence of an ongoing, "extensive" relationship between TB&F and Barry Gold.

Furthermore, as is evidence by the TB&F hiring letter in Stage Stores, Paul Traub faxed

his letter to Barry Gold and not any other officer thereof.

     18.     Whereas, we have Barry Gold and TB&F always involved in cases such as

eToys, Jumbo Sports, Luria & Sons, Witmark, and Stage Stores, always stating they have

nothing to do with one another, yet we have the incontrovertible, insurmountable

evidence of ADA.

     19     Throughout the hearings, pleadings etc. along with Her Honor's Opinion

of October 4th, 2005, everyone on the side of the alleged parties states that "ADA did not

do this, ADA did not share that, etc…etc…"

     20.     This again is subterfuge, as the issue is NOT what ADA did or did not do.

This issue of ADA is that it is clear, conclusive proof that the parties have had a

relationship, and that it is ongoing.

     21.     The real problem is the Stage Stores connection. Barry Gold worked for

the Debtor of Stage Stores, a/k/a Specialty Retailers, Inc., of Nevada. Paul Traub/TB&F

wrote a letter to be hired by Stage Stores/Specialty Retailers NV to assist with the

liquidation as "special counsel". The problem is not just the TB&F/Barry Gold

relationship thereof, but more importantly,

     22.     Specialty Retailers, Inc. of Nevada is co-debtor with Liquidity Solutions

(*Exhibit* ). And Liquidity Solutions has bought numerous claims of the DEBTOR's

ESTATE in eToys (*Exhibit* ). This connection is not disclosed.

23.     Barry Gold and TB&F signed their Declarations as participants to the PLAN, such as Barry Gold's Declaration as Plan Administrator that the "PLAN" in eToys was conducted in "good faith" with "arms length" negotiations between "DEBTOR" and "Creditors", which is a perjurious statement as they are testifying that it is "good faith" and "arms length" between Barry Gold and TB&F.

24.     Of extreme importance is the fact that Bain Capital was a participant in Stage Stores, and that Barry Gold testified that Jack Bush got him his jobs at Jumbo Sports and Stage Stores, and that Paul Traub was there, with TB&F, during the year 2000 and ending in January, 2001. Which coincides with the time TB&F began paying Barry Gold his $30,000 per month.

25.     Michael Glazer is CEO of KB Toys.

26.     Michael Glazer is a Director of Stage Stores.

27.     Bain owns KB Toys.

28.     Bain/KB acquired assets of eToys.

29.     Bain/KB was going to pay only $5.4 million for the assets of eToys in March 2001.

30.     I halted the auction processes of eToys and made KB, along with other buyers, pay more than $15 million for the eToys assets.

31.     Barry Gold/TB&F/Fred Rosner/Crossroads/MNAT all negotiated the sale of the DEBTORS assets to KB.

32.     That group collectively finds fault with my performance.

33.     That group along with other professionals such as Richard Cartoon, have been paid more than $14 million to date.

34.    That group, nor any participants thereof, have EVER disclosed the relationship to KB, Bain, Fleet or Goldman Sachs, until after we get the proof into the record.

35.    To this date every time we introduce this proof, they either do a no "pro se" or a no "new evidence" etc. to expunge,

36.    Including I placed a Memo of MisPrison into the record of KB which stated these facts and instead of the Trustee doing the correct thing, Mark Kenney who is the attorney for the Trustee in KB Toys, Kmart, eToys, Bonus stores and more, did ask the Judge (His Honor Sullivan) to expunge my statement. Which was done so expeditiously the signed Order was in the Public Record before the matter was concluded in front of His Honor.

37.    The following week His Honor was removed from the KB case.

38.    Lawrence Friedman as Chief Administrator of the US Trustee Office in Washington, D.C., gave me his personal assurance that the matter would be handled correctly.

39.    Then, on February 15th, 2005, Frank Perch as Assistant US Trustee in Wilmington, Delaware, emailed the Motion to Sanction TB&F.

40.    Then Frank Perch went on vacation.

41.    Then Mark Kenney, along with the "new" US Trustee that Lawrence Friedman had placed in Philadelphia, one Kelly Stapleton, filed a motion to settle the TB&F matter with broad based immunity language that was drafted and negotiated by James Garrity, ESQ, Sherman & Sterling, and who used to be a Federal Judge in the District of New York.

42.     Then I sent an email to Lawrence Friedman regarding the "insult" of that maneuver.

43.     Lawrence Friedman can no longer solve the problem as he resigned from the US Trustee Office for personal reasons.

44.     Robert Alber and I placed motions in the record on December, 2004, that showed that the eToys PEDC had decided to settle a matter involving eToys v Goldman Sachs for pre-petition payments.... R.R. Donnelley was a committee member and had two people on their board from Goldman Sachs.

45.     R.R. Donnelley and Goldman Sachs decided to divest themselves of one another to the tune of $350 million on December 16th, 2004.

46.     MNAT to this day has NOT declared that they worked for Mattel in 1999, who was the senior creditor and Committee Chairman in eToys (***Exhibit*** ).

47.     MNAT did not declare, until we pointed it out, that it worked extensively with Goldman Sachs.   Where MNAT not only represented Sachs and GE Capital Corp (GECC) in the Finova Case, but that MNAT represented them both concurrently while allegedly fighting against them in the eToys case, and that the case filing numbers of the Finova cases ends at 01-705 and eToys starts at 01-706 and therefore were filed back-to-back.

48.     MNAT stated, under Oath, that they do not require all of their attorneys to comply with ethics requirements.

49.     TB&F along with my former counsel, a former Trustee in Wilmington, Delaware, Henry Heiman of Heiman, Aber, Goldust & Baker, threatened me to "back off" or I would find No work and they would even come after me for monies I had

already been paid.

50.    This was a threat made after Henry Heiman submitted the Affidavit into the record of the former Chairman of the Creditors Committee.

51.    Then, after submitting that Affidavit which undeniably substantiated my claim, Henry Heiman started a new firm.

52.    We had a trial date of February 4th, 2005, for the CLI claim.

53.    A new firm took on CLI, but would ultimately not represent CLI or myself in the allegations of the deceptions; that firm was Brooks & Hoffman, LLP.

54.    Brooks, Hoffman was consistently trying to get me to "adapt" my testimony to fit the implied meaning of the contracts, as if all parties were dead.

55.    I had originally told Brook, Hoffman that I wanted to depose "all" the parties as one liar can handle a situation, but many liars tend to mess up; as we have already witnessed here.

56.    Brooks, Hoffman had originally told me "No!" and that they were doing this case on a contingency basis and had already paid $20,000 in fees to local counsel in Delaware.  That they could only afford to depose 3 or 4 "key" persons who were the most knowledgeable in my case.

57.    Then Brooks, Hoffman told me they changed strategies and wanted to depose everyone.

58.    Brook Hoffman then instructed me that they were going to put off the June, 2005, trial date to September, 2005.

59.    I strenuously objected, but they told me it was in my best interest.

60.    Then Brooks, Hoffman placed a motion before the Court to withdraw.

61.    Her Honor Walrath, without any reason given, ruled that the CLI claim would be adjudicated by His Honor Randolph Baxter.

62.    His Honor Baxter allowed the new stipulated Scheduling Order.

63.    His Honor Baxter allowed Brook Hoffman to withdraw.

64.    His Honor Baxter gave CLI 10 days to seek new counsel.

65.    His Honor Baxter issued an Order that warned of Sanctions should I, Laser Steven Haas, post any pleadings without Counsel.

66.    Then the PEDC put in a motion to dismiss CLI.

67.    It was unreasonable, given all the "bad faith" etc. that was occurring, for the Court to only allow CLI 10 days to locate and retain new Counsel.

## ARGUMENTS AGAINST PEDC MOTION TO DISMISS

68.    I, Steven Haas, am permitted under Rule 7024, the "Right of Intervention", and/or Under Fed Rule of Civ Proc. 25, "Substitution of Parties", and/or Fed Rule of Civ Pr. 23.1, "Derivative Right of Shareholder", and/or 503(b) "Substantial Contributions", as 100% sole owner of the assets of CLI, and as the sole appointed liquidator who only used CLI at the behest of the "fraudulent" parties.

69.    As previously stated by Her Honor Walrath in citing Rule 60(b)(6) (the excerpt that requires emphasis to be added here is) ---- *holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient "extraordinary circumstances" to justify relief under Rule 60(b)(6). To hold otherwise would only serve to penalize the (Plaintiff) for delay that was beyond his control and to reward conflicted attorneys for failing to disclose their conflicts beyond the one-year period."* It would be a great miscarriage of

justice to permit the perpetrators of gigantic Fraud & Conspiracy to do Fraud upon the ESTATE equity holders, the Creditors that were not part of the subterfuge, myself who performed a job that now anyone has to admit was overwhelmingly successful given the fact that all parties both within and without needed my demise to line their pockets with greater wealth, needless to say that the Fraud as a whole, that as overwhelming as it may currently be, is still mostly uncovered. What is occurring is white collar Fraud that the parties have received an "Insulting" slap on the wrist with the $750,000 penalty, while still receiving more than $14 million in fees in violation of 101(14) as none of them, NONE, are disinterested; clear violations of 2014, 2016, 327, where even if you were to allow Barry Gold not to disclose in a regular case as a CEO we have the evidence that the relationship with TB&F is extremely "Extensive", that the US Trustee told all parties that whomever replaced an officer of eToys had to be "arms length" from all parties, that His Honor Farnan in Wilmington, Delaware, did set both the "quantitative" and "qualitative" standards for who must apply as a Professional. Where all Courts have held that 'anyone' who plays a central, core, key, germane or autonomous role in the issues of an ESTATE, must apply and disclose.

70.     The PEDC has brought before this Court the motion to dismiss, which the PEDC in the Notice stated that it noticed Steven Haas by "other means". Whereby I, Steven Haas, argue that the beast of deception just will not give up as they attempted to have this Court hear a dismissal without my presence.

71.     The PEDC also quotes the Table of Authorities using In re: Carefirst of Maryland Inc. v. Care First Transportation Inc. which does not apply as Carefirst of Maryland, which is a "Blue Shield" entity, sought to dismiss Care First who had sent a

letter against Carefirst using the name Carefirst. As a Delaware Corporation it was found

that Care First, via a corporate officer, could not defend itself as it had a) no Counsel and

b) no legal brief of rule or standing and made no "good faith" effort to state its case.

Whereas under "derivative right of shareholder" if a corporation fails to accomplish an

issue that results in material affect of a shareholder a shareholder can claim derivative

rights. Also it does not compare to this case as I have made every good faith effort to

comply, and endeavor that CLI handle the affair, but given the fact that TB&F represents

a disproportional amount of control in Bankruptcy cases that are above $10 million retail,

that I have submitted a Motion to seek removal of Mark Kenney as Counsel for the

Trustee under Code & Rule 324(a) and 2020, that I have alleged Fraud, Conspiracy &

Corruption that "no one" ever wants to come near. That the Wall Street Journal on July

25th, 2005, published an article, that the FBI Bulletin News, along with the White House

Bulletin News, has given the case review, that the Dow Jones Bankruptcy News Service

along with 'Law Professor Blog' have made note of the Travesty of Justice that has

occurred by the "slap on the wrist" sanction of TB&F, along with the fact that I can

document to this Court that I have gone to extreme measures to gain Counsel, that I did

have Counsel appear for CLI on August 22nd, 2005, but His Honor Baxter refused to

allow him to place his "pro hac vice". That combined with the fact that there are also two

(2) Appeals of the Judge's Order and Opinion of October 4th, 2005, one of which (mine)

has been designated for this same District Court. I will argue that the case of Carefirst

has no similarity to CLI or me whatsoever.

72.    The PEDC has also sought to use the fact that In re: Care First quotes

Rowland, California, Men's Colony which is a Supreme Court Decision. That again has

little or no applicability to this case whatsoever as that case is about a group of Prisoners'
Right(s) to not have to pay filing fees due to indigent status. Where the Court found that
a "person" may or may not mean "association" "group" (or here Corp) as they may or
may not have dissenting opinions on the Constitutional meaning of "persons". In that
case it was decided that the "persons" had not proven their indigent status.

73.    Finally, the PEDC seeks to quote the earlier arguments that have been
utilized by the Delaware Bankruptcy Court to suppress CLI/Steve Haas without Counsel.
I again argue that I have rights under Fed Rule of Civ Prc. of "substitution", "right of
intervention", "derivative right of shareholder", and Rule 60(b)(6) that "extenuating
extraordinary circumstances" exists here of Fraud and Corruption. The apathy of the
U.S. Trustee's Office to do its Duty as required under 28 USC § 586 (a)(3)(F), the duty
to Notify & Refer, where in this case alone we have evidence of over 50 felonies
occurring, and where many of the acts have been admitted to. But due to the fact that
Goldman Sachs, Bain Capital, Mitt Romney (co-founder and controlling person of Bain
Capital, Governor of Massachusetts, and control of Stage Stores), Josh Bekenstein (co-
founder of Bain Capital), Shearman & Sterling, Liquidity Solutions, the Madison entities,
R.R. Donnelley, the Bousquette family tree: one brother, Mathew Bousquette, was until
very recently President of Mattel, the sister, Janine Bousquette, was an Executive at
eToys and until recently Sears, while another brother, William, is an Executive at
Goldman Sachs (which could very possibly be how the former Chairman of the Creditors
Committee was forced into an unexpected, early retirement from Mattel). Take all this
and add to it the (still undisclosed) relationship that MNAT worked for Mattel, that Barry
Gold and TB&F worked with Stage Stores which also engaged Michael Glazer the CEO

of KB Toys.

74.    None of these extenuating circumstances are within any of the authorities

that the PEDC quotes, nor do any of the authorities even remotely resemble this situation

(s).

## SUMMATION

75.    The appellant is a liquidator that has gone above and beyond the call of

duty, the appellant is in firm of his life as all other threats of business demise has

occurred to appellant.

76.    Appellant is here testifying under penalty of perjury, that appellant has

proof of countless felonies that both the US Trustee Office and the Delaware Bankruptcy

Court have shown little ability to correct.  That it appears much more the desire of all

parties involved to quietly sweep the issues(s) under the carpet and if the appellant is the

messenger that has to be sacrificed in the process, so be it.

77.    The duties to "Notify & Refer" by both the Trustee and the Bankruptcy

Court are non evident.  Along with the duty to do sufficient deterrent.  That the issue is

Billion dollar($) players such as the company that the Governor of Mass. Bain, Stage

Stores and more, along with Goldman Sachs, TBF and there remain many more

connections involved that will "dumbfound" any honorable person who desires to see

integrity in and of the system.

78.    It would be a miscarriage of justice to allow the felonious parties to keep

their subterfuge quiet, punish the plaintiff (appellant) while allowing the perpetrators to

keep the lion share of the $14 million (+) of fee's etc received to date (needless to say the

fact that the monies that Liquidity Solutions has received are rescindable and the overseas

monies of DEBTOR are still unaccounted for).

79.     Under the Right of Intervention, the Right of Substitution, the Derivative Right of Shareholder and 503(b) Substantial Contribution this appellant, with the fact that the adversarial parties herein drafted the appellants contract, discouraged appellant to have proprietary counsel and the fact that the contracts were done "nunc pro tunc" after the work was vastly completed, while appellant worked for more than 8 months under what is now apparent to ALL to be extreme duress and antagonistic environment. Where also the contracts were signed by the Court and approved appellant as sole liquidation agent. That taken with the testimony of the Chairman of the Committee that appellant was hired specifically seeking the utilization of the abilities of Steve Haas and not any particular company is overwhelming substantiation that appellant has the right to be heard, reviewed and acknowledged.

80      Wherefore appellant pray this Court for the sake of the judicial process, the integrity of the system and the precedents that cannot be allowed to be set by the subterfuge that has occurred, to reject, with prejudice the PEDC motion to dismiss while additionally, the appellant now feels that this Court can move the matters that have lost control and ethic assurance to this Court, especially given the fact that an appeal also has been set to review the Order and Opinion of October 4, 2005 to this very same Court.

Respectfully submitted this November 4, 2005          /s/ Steven Haas /CLI

President & CEO

Collateral Logistics, Inc.

(CLI)