# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------X
In re:                                  :
                                        :
                                        :          Chapter 11
                                        :
ETOYS, INC., et al,            :        :   Case Nos. 01-0706
                                        :        Through  01-0709
                                        :        Jointly Administered
          Confirmed Debtors             :
--------------------------------------------------X
                                        :
STEVEN HAAS, et al                      :
                                        :
          Appellant,                    :
                                        :
          v.                            :          Civil Action No. 05-728
                                        :
ETOYS, INC. AND POST-EFFECTIVE DATE     :
COMMITTEE OF UNSECURED CREDITORS,       :
TRAUB BONACQUIST & FOX, MORRIS          :
NICHOLS ARSHT & TUNNEL,                 :
BARRY GOLD, FREDRICK ROSNER             :
                                        :
          Appellees                     :
```

## BRIEF RESPONSE BY APPELLANT PER COURT'S SCHEDULING ORDER ON PEDC MOTION TO DISMISS APPELLANT STEVEN HAAS SOLE; SHAREHOLDER OF COLLATERAL LOGISTICS, INC.

Upon the Court directing both Steven Haas and the Post Effective Date Committee (the "PEDC") to participate in a conference call to answer to the Court the failure of both parties to participate in the "mandatory mediation" Ordered by this Court, the Court did Order to grant a Motion to Stay Appeal pending the PEDC motion to dismiss Steven Haas who is President of Collateral Logistics, Inc. ("CLI") the sole Court appointed liquidator in eToys Bankruptcy Case 01-706 (the "DEBTOR").

- 1 -

## PRELIMINARY STATEMENT

The PEDC has graciously sent to this District Court, and by email to Appellant (after His Honor had a teleconference of parties on the failure to comply with "mandatory mediation"), as support to the Motion to Dismiss Appellant items that includes Her Honor Walrath's Opinion & Order of Sanctions of the Attorney for the Creditors, Traub Bonacquist & Fox in the eToys case 01-706 Fed. Dist. Wilmington DE Bankr. Jointly administered.  Therefore this Appellant respectfully requests that the Court first read the Opinion which gives "detailed" insight into the "subterfuge" that has occurred to understand why this Appellant is in fear for his well being.  Furthermore said Opinion states "facts" that are not in dispute, which will conserve the Court's time.

So Appellant submits the support documents of the PEDC, specifically Her Honor Walrath's Opinion of October 4, 2005, as <u>EXHIBIT 1</u> and Her Honor's coinciding Order of October 4, 2005, as <u>EXHIBIT 2</u>.

Additionally there are the Affidavits of the former Chairman of the Creditors' Committee in the eToys Estate which give testimony to the fact of how the contracts were designed, by whom, and the intent of the hirings, along with the Haas Affidavit which the PEDC and the collective adversary parties thereof contend is a "waiver".  Wherefore Appellant now submits the Chairman's Affidavits as <u>EXHIBIT 3</u>, <u>EXHIBIT 4</u>, <u>EXHIBIT 5</u>, respectively as to timelines.

## LIST OF THE PLAYERS

Upon the review of the Bankr. Dist Opinion of Oct 4, 2005 the parties involved are now detailed, which Appellant hereby lists as follows:

A)      Traub Bonacquist & Fox ("TB&F") the Court approved Counsel for the Creditors' Committee in eToys 01-706, KB Toys 04-10120 (Wilmington, DE), and Stage Stores, Inc. ("STAGE") 00-35078 Southern District of Texas (Houston) and partner with Barry Gold in ADA.

B)      Morris Nichols Arsht & Tunnel ("MNAT") the Counsel for the Estate of eToys 01-706 (whose primary office is in Wilmington, DE), while at the same time being Counsel for Goldman Sachs & GE in Finova (01-705 Wilmington, DE), and also remaining to this day undisclosed Counsel for Mattel (a major creditor of DEBTOR, and who was promoted and achieved a position on the eToys PEDC at the behest of MNAT).

C)      The eToys Estate 01-706 (the "DEBTOR").

D)      The Post Effective Date Committee (the "PEDC") (The Confirmed Plan committee of the DEBTOR)

E)      Fredrick Rosner, who is currently with the firm of Jaspan, Schlesinger as local Counsel for the PEDC (Mr. Rosner has moved to 3 different firms during this case, the case has always traveled with him.)

F)      Barry Fredrick Gold, who came on board the Debtor "post petition" first as "wind down coordinator" and then CEO and President in mid-2001. Wind-down officer in Luria & Sons with TB&F, Jumbo Sports with TB&F at Witmark with TB&F, along as ADA co-owner with Paul Traub of TB&F in Homelife & Bonus Sales. Who was paid 4 separate $30,000 monthly payments by TB&F, which was not a loan per TB&F and Barry

Gold testimony, prior to Barry Gold coming on board the DEBTOR in secret kept from the Court, the Chairman of the Creditors' Committee and Appellant.

      G)    Asset Disposition Advisors ("ADA"), which is a company that is co-owned by Paul Traub of TB&F and Barry Gold, where we have their testimony that they both worked for and/or with HomeLife, Bonus Sales, Zainy Brainy, FAO Schwartz, Phar-mor, Drug Emporium, Office Max, and KB Toys {where TB&F is Creditors' Committee Counsel and ADA with Paul Traub and Barry Gold, along with Fleet, Michael Glazer, Jack Bush, and Bain.

      H)    Mark Kenney is the appointed "watchdog" per the Janet Reno Reform Act of 1994, by the US Trustee Dept where Mark Kenney is the "Counsel" for the US Trustee. Mark Kenney is assigned to the eToys case, KB case, Finova case, Bonus Sales case and GlassTech case which has Liquidity Solutions as co-Debtor within GlassTech as they are listed in STAGE.

      I)    Lee Castillo, the former Chairman of the Creditors' Committee.

      J)    Ellen Gordon of Crossroads, LLC (where Crossroads is the Court appointed financial consultant to the DEBTOR), who stated that "while waiting on Court approval of the hiring of Barry Gold" in her billing statements regarding a discussion with the US Trustee office about OCPs.

      K)    Richard Cartoon who was the financial Consultant to the Creditors and subsequently appointed as financial Consultant for overseas interests of the DEBTOR.

## LISTING OF FACTS TO WHICH APPELLANT TESTIFIES UNDER OATH

M)     That the former Chairman of the Creditors' Committee, Lee Castillo, hired Appellant to assist in a liquidation that had gone awry. (The DEBTOR, prior to appellant influence, had agreed to double every employee's pay of the DEBTOR and there were auctions set up to sell all assets for pennies on the dollar  where KB Toys had told the public (WSJ article of 2001) that it had acquired substantially all of the assets for $5.4 million. (one auction that the DEBTOR forbid the appellant to halt was the sale of the assets in the Kilroy home office of DEBTOR on Olympic where appellant offered to get $100,000 or more to no avail, the DEBOTR, TBF, MNAT, CrossRoads LLC proceeded to sell the extremely new FF&E worth over $1million for $35,000 to Pennyworth.

N)     That Appellant halted the remaining auction processes, assisted in causing the KB Toy purchase of the assets to be greater than $9 million, and reduced the DEBTOR'S employment from 1000 employees down to the Appellant's crew; way below what the DEBTOR maintained was necessary for "wind down"!  While appellant's efforts helped achieve total cash returns to DEBTOR of approximately $20 million instead of the $5.4 million.

O)     That Barry Gold signed a Declaration "under penalty of perjury" that the Plan was drafted in "good faith" and "arms length" negotiations between DEBTOR and creditors. Which is impossible to accomplish as it stated "arms length" between Barry Gold and TB&F.  Where Barry Gold and Paul Traub of TB&F have admitted that TB&F paid Barry Gold four (4) separate payments of $30,000 each in early 2001, before TB&F placed Barry Gold in as "wind down coordinator" and President/CEO of the DEBTOR.  That this

was not disclosed until the existence of ADA was revealed to the Bankruptcy Court by Appellant.

P)      That Barry Gold and TB&F both admit that they worked for Stage Stores, Inc.. And that Barry Gold has stated that Jack Bush was the party that handed him assignments at Stage Stores, Jumbo Sports and others.

Q)      That Jack Bush is an Executive of IdeaForest, which is a Bain entity. Jack Bush was also a director of Jumbo Sports and STAGE.

R)      That Mitt Romney owned Bain and had a controlling interest in Stage Stores at the time that Barry Gold, TB&F and Jack Bush worked there.

S)      That Michael Glazer is CEO of KB Toys, and KB did purchase the assets of the DEBTOR's Estate (eToys) while Glazer was President and CEO of KB.

T)      That Michael Glazer was, and still is, a Director at Stage Stores.

U)      That Bain was the owner of KB Toys when Barry Gold and TB&F negotiated the sale of the DEBTORS assets to KB/Bain.

V)      That Stage Stores Inc is also co-debtor with Liquidity Solutions (which TB&F and Barry Gold worked for as STAGE is also Specialty Retailers, Inc.).

W)      That Liquidity Solutions has bought numerous claims in the DEBTOR'S ESTATE.

X)      That the PLAN of the DEBTOR'S Estate, that was drafted by TB&F & Barry Gold by "good faith" and "arms length" negotiations between DEBTOR and creditor (between Barry Gold and TB&F), contains a clause that allows the payment of claims etc... under $1 million without Court approval. <u>Which includes claims purchased by Liquidity Solutions.</u>

Y)     That Barry Gold was questioned, pre-Plan, about his connection with Luria & Sons and connections/ties to TBF.  And TBF, Barry Gold, MNAT, Fredrick Rosner and Mark Kenney remained silent and allowed the Plan to be confirmed under the false pretense of "good faith".  (Please see the Transcript of Oct 16th, 2002, in eToys Case referencing Alber's questioning of Barry Gold.)

Z)     That this case has great potential for over 50 felony convictions available to assure justice, including, but not limited to: a) the Janet Reno Reform Act of 1994 USC 155 - Fee Fixing, where TB&F has admitted that TB&F paid Barry Gold four (4) separate payments of $30,000 each prior to placing Barry Gold in, without disclosure, as "wind down coordinator," and later as CEO and President of the DEBTOR, that the payments stopped once Barry Gold was within the ESTATE, which benefited TB&F since TB&F no longer had to pay Gold the $30,000 per month, b) TB&F, along with MNAT and Fred Rosner (among others) negotiated the payment of Barry Gold where Gold received $40,000 per month initially, which is a clear benefit to Barry Gold, and c) the final nail of this particular felony is the requirement(s) that it be: 1) of an Estate in Bankruptcy, and 2) that it be willful.  Whereas we have Barry Gold's hiring letter that shows MNAT, TB&F and others drafted it (no one will admit who personally drafted Gold's hiring letter, we just have testimony that whoever it was that drew up the letter "knew" that it was ok) which gives Barry Gold "willful," "volition," of his own to seek employment approval of the Court.  Barry Gold has also testified that he disclosed the TB&F relationship in every other case but the DEBTORS, and that he has 38 years of experience in liquidations, bankruptcies, turnarounds and retail sales.  (Please see EXHIBIT 6; the excerpt from the 'Barry Gold hiring letter' that he submitted in his January 25th, 2005, response and was

entered into evidence on March 1st, 2005. Appellant would here argue that it is much more plausible, given the gains through subterfuge that has occurred, that Mr. Gold was willing to participate in the ruse but required an indemnifier for himself & protection against Appellant and the Chairman of the Committee, where the verbiage in his hiring letter gave Barry Gold willful circumvention, that Appellant contends was an endeavor to assist Barry Gold to avoid committing perjury.) And, by Barry Gold's own intentional, willful, volition, circumvention of the Code/Rules of 101(14), 327(a), 2014 & 2016. Of note: the hiring letter does not cover the issue of the 'Bain, Michael Glazer, Jack Bush' connection Mr. Gold had(has) with STAGE, TB&F, Foothill Capital, Fleet or Liquidity Solutions which to date he, or any of the Defendants/Appellees, have to date disclosed.


## ITEMS OF DISCUSSION IN DEFENSE OF PEDC MOTION TO DISMISS

1.    I, Steven Haas, this day remain, since the inception and formation, and the initiating party of formation, the sole & 100% stock holder, President and CEO of CLI.

2.    The Court, specifically Her Honor Chief Federal Judge Mary F. Walrath in the Wilmington, Delaware Bankruptcy Court, did hear allegations of "non disclosure", "conflicts", "perjury", "false oaths", "false declarations", "fraud", "conspiracy", "scheme to fix  fees", "misprison", "disqualification", "sanctions", "collusion"  and more in the matter of the eToys Bankruptcy that was subsequently "taken under advisement" for a period greater than 5 months from the March 1st, 2005 hearing.

3.    On October 4th, 2005, Her Honor Walrath, after having taken such matters under advisement for more than 5 months, did hand down an Opinion and Order in response to the Allegations, initially substantiated by Steve Haas/CLI in November of 2004

by entering Proof of a partnership that existed between Barry Gold (Post-Petition wind-down officer, CEO and President of the DEBTOR) and partner and principal Paul Traub of the Law firm Traub, Bonacquist & Fox ("TB&F") (where TB&F is the Counsel for the Official Creditors' Committee). That partnership became known to me through a former member of TB&F where I was informed, during an incidental phone call, that Barry Gold and Paul Traub had a partner relationship, and that this relationship existed for years prior to eToys. And it was also related to me that Barry Gold did come around to celebrate successes back when TB&F was known as Traub, Bonacquist & Yellen. The documents that prove that relationship are no longer in dispute; specifically the Asset Disposition Advisors, LLC ("ADA") Delaware Secretary of State's filing that was accepted as evidence by Her Honor Walrath in making her decision.

4.      That combined with the accepted evidence of the Pacer Court records of In re: Bonus Stores 02-12284 Trustee's objection to ADA, along with In re: Homelife Corporation 01-2412, both of which are in the same Wilmington, Delaware Federal Court, supervised by the same Trustee Office, were enough foundation for Her Honor Walrath to Order that a) all parties alleged against are to respond by January 25th, 2005 (the "RESPONSES"), and b) that a Hearing on the "allegations" was to occur on February 1st, 2005, and c) Depositions of MNAT and TB&F Attorneys, and Barry Gold, which resulted in d) an additional hearing on March 1st, 2005, that Robert Alber (an eToys equity security holder) and I now understand to have been the evidentiary hearing.

5.      During that hearing Paul Traub, on the Stand, admitted to the Court that his firm, TB&F, did pay Barry Gold four (4) separate payments of $30,000 each month prior to

Barry Gold becoming the "wind down coordinator" of eToys during May of 2001, and by pre-arrangement Barry Gold became CEO and President of eToys in June of 2001.

6.    Without understanding the massive amount of subterfuge and specious behavior of the parties, a Court would regularly dismiss a "pro se", "pro per", "substituted party", "party of interest", "shareholder" and/or other person.  As the Court, specifically the Federal Bankruptcy System, relies upon the ethics of the Members & Officers of the Court to assure proper, ethical, jurisprudent adherence to the Code and Rules for the sanctity of the Judicial Process.

7.    Therefore, I gladly come before this Court today with these "Facts" that I do testify to "Under Penalty of Perjury" that my LIFE has been threatened, that I have been offered "bribe(s)", "threat(s)" and demise of my business endeavors, and physical well being, for failure to cooperate and become part of the "good ole boys club"!

## EXCERPT OF OPINION OF OCT 4th, 2005, THAT IS PARAMOUNT OF THIS PLEADING AND BRIEF

8.    Pages 15 & 16 of the Opinion (EXHIBIT 1), that has been supplied to this Court by the PEDC, contains the following application of Fed Rule of Civ Proc 60(b) (6), where it quotes "In re: Southmark Corp., 181 B.R. 291, 295 (Bankr. N. D. Tex. 1995)" (granting relief under Rule 60(b)(6) from final fee order which had been entered nearly three years earlier). See also: Hazel-Atlas Glass Co. v. Hartford Empire Co.,  322 U.S. 238, 244-45 (1944) (holding that fraud upon the Court equitably tolls the time for seeking to set aside a judgment or order); Pearson v. First NH Mort. Corp., 200 F. 3d 30, 35-41 (1st Cir. 1999) (holding that attorney's false disclosure which denied any connection with creditors

could support a finding that attorney had committed a FRAUD upon the Court); Benjamin's-Arnold 1997 WL 86463, at *10 (holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient "extraordinary circumstances" to justify relief under Rule 60(b)(6). To hold otherwise would only serve to penalize the (Plaintiff) for delay that was beyond his control and to reward conflicted attorneys for failing to disclose their conflicts beyond the one-year period.")

9.    The excerpt that requires emphasis here is ----*holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient "extraordinary circumstances" to justify relief under Rule 60(b)(6).  To hold otherwise would only serve to penalize the (Plaintiff) for delay that was beyond his control and to reward conflicted attorneys for failing to disclose their conflicts beyond the one-year period."*

## PROOF OF FRAUD BY TB&F, BARRY GOLD and MNAT IN THE EXTREME

10.    For I, Steve Haas, am the "sole" Court Appointed liquidator in the DEBTOR's Estate as per the "nunc pro tunc" Orders that Mr. Rosner of the PEDC has supplied to this Court in his brief and the "Contracts" between the DEBTOR and CLI that were signed by Dave Gatto but drafted, written and submitted to the Court by TB&F, Fred Rosner and DEBTOR's Counsel MNAT.  Where Counsel(s) for the Creditors and DEBTOR, along with Barry Gold, did discourage me from hiring my own Counsel as a cost saving measure to the ESTATE. The Former Chairman of the Creditors' Committee Affidavit(s) (*Exhibits 3, 4 & 5*) where he did hire both TB&F and Appellant, which gives the history of the relationship by a third party that has vast experience in these matters,

- 11 -

including vast experience as a Chairman of a Creditors' Committee, along with extensive experience as a Committee/Chairperson with cases involving TB&F.

11.    My most naïve statement is something I told Barry Gold when I first met him and became aware of his becoming CEO and President.  As I had never heard of "wind-down coordinator" until the RESPONSES of January 25th, 2005, where Barry Gold did submit his hiring letter (***Exhibit 6*** ), which shows that it was drafted by party(s) while allowing "willful" choice to apply to the Court for hiring of his own "volition", and to date neither MNAT, TB&F, Barry Gold, nor anyone else will admit who personally drafted the Barry Gold hiring letter, yet we have the letter by Traub (TB&F) to Barry Gold in STAGE that exhibits the same unusual font & characteristics.  Appellant, in my naïve state, told Barry Gold that I had to do many maneuvers to assure that TB&F would not assist the buyers of DEBTOR's assets in getting a better price.  I therefore told Mr. Gold how it appeared that TB&F made friends with liquidators for the sake of a future business foothold in the bankruptcy liquidation industry) as rumor had it that Paul Traub was more an Attorney for Gordon Brothers and other liquidators than the Creditors (this statement now appears naively stupid in the extreme, but I ask this Court who could dare believe that the Counsel for the Creditors' Committee, who is a vastly experienced, professional Bankruptcy Attorney, would deceive the Chairman of the Creditors' Committee, Lee Castillo, a person who Paul Traub used to call his "Rabbi" out of endearment for the vast amount of work the Chairman permitted Paul Traub & TB&F to engage in, along with the Court, parties of interest and more, with such subterfuge by placing, in secret his partner in as DEBTOR's sole authority and officer thereby taking great, substantial risk, for the sake of greed, of sanctions and incarceration (Barry Gold was required to apply and disclose

regardless of what title you give Mr. Gold, "wind down" "CEO" he was the "sole" decision making authority specifically concerning "All" bankruptcy matters).

12.    Therefore, I sealed my fate as I told Barry Gold that Paul Traub was a guy that one could not trust. In not knowing their relationship existed, I allowed the check and balance (meant to keep integrity in check) of Barry Gold v TB&F v Chairman of Creditors v Court appointment to be corrupted as all the scheming parties had to do was remove the Chairman of the Creditors' Committee. Then it would be their word ("their" being the Counsels who participated in the Barry Gold subterfuge and the DEBTOR who is Barry Gold) against Appellant's statement(s) in the realm of the Court. They (the collective deceiving parties) did draft Appellant's "nunc pro tunc" contracts and Court Orders with the premeditated forethought of dooming Appellant.

13.    As my tapes will show, Barry Gold negotiated the drafting points of my contract, along with Susan Balaschak of the TB&F firm, while being physically at the DEBTOR'S previous home office on Olympic Blvd. in California.

14.    Per the California State Bar Standing Committee on Professional Responsibility and Conduct with Formal Opinions, as in Evidence Code sections 917(b) and 951, along with California State Bar Formal Opinion No. 2003-161 which specifically states "the attorney-client relationship, with all of the duties attendant upon that relationship-including confidentiality- "is created by contract, expressed or implied." (id. At p. 3, citing Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) and Miller v. Metzinger (1979) 91 Cal. App. 3d 31, 39-40 (154 Cal.Prtr.22); noting that a relationship exists when an attorney agrees to be consulted. Whereby we have this testimony under oath, along with the ex-Chairman's Affidavit(s), combined with the fact that the "nunc pro

tunc" Orders for CLI specifically state that CLI is excused from 328 & 2016 and that submission thereof will be done with "assistance of debtors Counsel", even though the Chairman and Appellant believed that TB&F was in control and would handle all matters as the DEBTORS estate was a Liquidating Chapter 11.   Therefore the parties that discouraged Appellant seeking Counsel who would have done the legal drafting and submission of the CLI contracts, along with Appellant statement here today that is verified by the Chairman's Affidavit(s), that CLI was not the primary desired employee of the Creditors. Rather that I, Laser Steven Haas, was their choice, giving overwhelming support to the discussion that they (the PEDC, Barry Gold, MNAT, TB&F etc.) surely cannot be a witness against the party they represented (me).

15.    It is also worthwhile to note that the only item(s) other than the contracts to hire, that are submitted by TB&F, PEDC or DEBTORS Counsel, is the HAAS AFFIDAVIT of November, 2001, eToys Docket 816, that they collectively state is a waiver. Where I have always contended such is not a waiver as line 10 and 11 within the HAAS AFFIDAVIT specifically state that CLI is entitled to success fees and expenses. So Appellant offers as (*Exhibit 7*), hereto the HAAS AFFIDAVIT, and as (*Exhibit 8*), a drafting that was done by Susan Balaschak (TB&F) of a waiver, to show you that they know the form of a waiver, that Appellant denied any waiver, and to give further evidence of "subterfuge".

## SUBTERFUGE DISCUSSION

16.    Barry Gold and TB&F never disclosed their relationship, as is evidenced by Her Honor's October 4th, 2005, Opinion.

17.    Barry Gold, by his own hiring letter, response of January 25th, 2005, deposition of February 9th, 2005, and the hearings of October 16th, 2002, November 1st, 2002 (pre-plan), which are Transcripts in the record along with the Transcripts of February 1st, 2005, and March 1st, 2005, show premeditated forethought as the hiring letter was drafted to allow Barry Gold "willful" circumvention of his own "volition" to not apply for Court approval. Yet Barry Gold in those same documents boasts of 38 years of experience in bankruptcies, liquidations, turnarounds, and retail management. We also have Barry Gold's and TB&F's testimony that they disclosed their relationship everywhere but eToys. We also have (***Exhibit 9*** ) attached hereto that is Ellen Gordon's  of CrossRoads, LLC (as Court approved financial consultant of the DEBTOR) billing statement eToys docket number 467 which shows a detailed history of discussions on hiring a replacement professional which mentions on page 38 thereof a phone call with D. Breeden, Ellen Gordon, and the US Trustee office on the stand of "responsible person" implying that she had discussions with the US Trustee about OCPs (ordinary course professionals) and that Barry Gold must apply, while also giving further evidence that Barry Gold did apply where on the Crossroads billing docket of 467 on the Pacer public website it states that Crossroads assisted with the recruitment of several key positions along with the anticipatory statement "Mr. Gold's employment is pending Court approval and contingent upon obtaining a D&O insurance policy." Furthermore the Trustee stated in his Motion of February 15th, 2005, to sanction TB&F that it is --- hard to believe that the failure to disclose the Barry Gold / Paul Traub relationship was anything other than deliberate rather than inadvertent --- especially given the fact that the Trustee had given notice to all parties that any replacement officer of the DEBTOR had to be "arms length" of all parties involved. Additionally, Barry Gold

was placed on the stand "Pre-Plan" confirmation and questioned by Robert K. Alber (an eToys shareholder) on a possible relationship with TB&F in the ESTATE of Luria & Sons. Where Barry Gold dodged the question, implied there was no relationship and that he and Paul Traub did not own any assets together therein. Where I now submit to this Court that the TB&F Supplemental Affidavit In re: Stage Stores 0035078-H2-11, that there is an abundance of evidence of "Fraud", "Collusion" "the intent to deceive" and "Conspiracy" as the TB&F Supplemental Affidavit therein (STAGE) gives evidence of an ongoing, "extensive" relationship between TB&F and Barry Gold. Which is contrary to the Barry Gold & TB&F testimony within eToys. Where it gives a detailed report of the relationship of TB&F and Mr. Gold while at Jumbo Sports, Witmark, Luria & Sons, that TB&F, nor Mr. Gold did not confess to in their answers here under Oath in eToys. Within the eToys case as Mr. Gold is referred to as "wind down" restructure consultant in the TB&F supplemental disclosure in STAGE, yet all of their responses, declarations, on the stand testimony, endeavor to infer, in the DEBTORS estate that until ADA TB&F & Mr. Gold just barely knew of each other. Which is easily contravened by that fact which is the evidence by the TB&F hiring letter in Stage Stores, Paul Traub faxed his letter, entitled his letter to Barry Gold and not any other officer thereof at STAGE. While here it also it still remains partially undisclosed by Barry Gold and TB&F that they have a relationship with Foothill/Wells Fargo. They disclose they have a relationship with Foothill / Wells Fargo, however they have failed to mention that Foothill gave a $40 million dollar loan to DEBTOR in November of 2000 and it was paid off in February of 2001. That loan not coming under review, by an independent party, is exactly the same type of scenario as occurred In re: Bucyrus International Inc (Case No. 94-20786) (Bankr. F.D. Wis.) , where

Gellene had to go to jail for failing to pursue the rescindable interest of a former Goldman Sachs participant that gave $35 million to that Debtor and Gellene's firm Milbank & Tweed had to disgorge $1.9 million, which they refused to do until the Court stated it was going to call Gellene as a witness. Additionally TB&F & Mr. Gold make it sound as if their meeting was casual throughout the bankruptcy industry yet the TB&F letter seeking hiring in STAGE is not sent to STAGE CEO or President, but directly to Barry Gold. Where Credit Suisse objected to the hiring of Barry Gold /TB&F relationship TB&F in the STAGE case that made a supplemental disclosure in STAGE by TB&F that shows the relationship is NOT coincidental while furthermore attempting to utilize the same ruse in STAGE that TB&F & Barry Gold endeavor to utilize here. Where the TB&F supplemental letter therein states "to the best of my belief I do not believe Barry Gold had anything to do with the hiring of TB&F" which implies, greatly, that TB&F and Mr. Gold had an extensive relationship, but that it had little bearing as the TB&F & Gold relationship had nothing to do with TB&F getting hired within that STAGE estate case.

18.     Whereas, we have Barry Gold and TB&F always involved in cases such as eToys, Jumbo Sports, Luria & Sons, Witmark, and Stage Stores, always stating they have nothing to do with one another, yet we have the incontrovertible, insurmountable evidence of ADA & the ongoing relationship of Barry Gold within the DEBTOR & TB&F, MNAT, Fred Rosner, Mark Kenney defense of their relationship and what little harm was caused thereby.

19      Throughout the hearings, pleadings etc. along with Her Honor's Opinion of October 4th, 2005, everyone on the side of the alleged parties states that "ADA did not do this, ADA did not share that, etc...etc..." as stated by TB&F, Barry Gold, MNAT, Fred

Rosner for the PEDC (which is in direct conflict of his duties to his client that is the PEDC, not the members thereof) and Mark Kenney as "watchdog" for the equity holders.

20.    This again is subterfuge, as the issue is NOT what ADA did or did not do. This issue of ADA is that it is clear, conclusive proof that the parties have had a relationship, and that it is ongoing.    This was an incontrovertible fact that the insurmountable ness thereof mandated a come clean response. The offending parties only come clean today, with what they are faced with today.  They still have not disclosed the MNAT/Mattel relationship, the Mark Kenney TB&F/Kmart relationship, the TB&F/Barry Gold/ Foothill eToys Loan/ Fleet/ Liquidity Solutions/KB Toys /Bain/ Madison relationships or allowed Appellant or shareholders review of the overseas monies that were only disclosed after Appellant brought the matter that David Haddad was hiding such to the attention of the Committee.

21.    The real problem is the Stage Stores connection.  Barry Gold worked for the Debtor of Stage Stores, a/k/a Specialty Retailers, Inc., of Nevada.  Paul Traub/TB&F wrote a letter to be hired by Stage Stores/Specialty Retailers NV to assist with the liquidation as "special Counsel".  The problem is not just the TB&F/Barry Gold relationship thereof, but more importantly,

22.    Specialty Retailers, Inc. of Nevada is co-debtor with Liquidity Solutions (*Exhibit 10)*. And Liquidity Solutions has bought numerous claims of the DEBTOR's ESTATE in eToys (*Exhibit11)*.   This connection still remains undisclosed by TB&F or Barry Gold and is incontrovertible.

23.    Barry Gold and TB&F signed their Declarations as participants to the PLAN, such as Barry Gold's Declaration as Plan Administrator that the "PLAN" in eToys

was conducted in "good faith" with "arms length" negotiations between "DEBTOR" and "Creditors", which is a perjurious statement as they are testifying that it is "good faith" and "arms length" between Barry Gold and TB&F.

24.    Of extreme importance is the fact that Bain Capital was a participant in Stage Stores, and that Barry Gold testified that Jack Bush got him his jobs at Jumbo Sports and Stage Stores, and that Paul Traub was there, with TB&F, during the year 2000 and ending in January, 2001. This coincides with the time TB&F began paying Barry Gold his $30,000 per month.

25.    Michael Glazer is CEO of KB Toys.

26.    Michael Glazer is a Director of Stage Stores.

27.    Bain owns KB Toys.

28.    Bain/KB acquired assets of eToys.

29.    Bain/KB was going to pay only $5.4 million for the assets of eToys in March 2001 until Appellant halted the auction process.

30.    Appellant halted the auction processes of eToys and made KB, along with other buyers, pay more than $15 million for the eToys assets, much to the chagrin of TB&F/Barry Gold/MNAT/Fred Rosner/KB/BAIN and others.

31.    Barry Gold/TB&F/Fred Rosner/Crossroads/MNAT all negotiated the sale of the DEBTORS assets to KB.

32.    That group collectively finds fault with Appellant's' performance.

33.    That group along with other professionals such as Ellen Gordon of CrossRoads LLC who also sought, heavily to find fault with Appellant, accused Appellant

of insider trading (when Appellant had someone to buy the public shell of DEBTOR for $2 million) Richard Cartoon, have been paid more than $14 million to date.

34.    That group, nor any participants thereof, has EVER disclosed the relationship to KB, Bain, Fleet, Foothill Capital, Liquidity Solutions, Madison or Goldman Sachs, until after we get the proof into the record.

35.    To this date every time we introduce this proof, they either do a no "pro se" or a no "new evidence" etc. to expunge, such as Appellant or the shareholder of eToys endeavor to point out the egregious relationship that exists of TB&F & Barry Gold to Bain, who owns KB Toys, and Jack Bush, key executive at Bain, STAGE, Jumbo Sports, along with Michael Glazer who is director at STAGE and CEO of KB Toys, where all parties that participated with the Barry Gold hiring deception are involved in the KB Toys case, that as unethical as that may sound the most incomprehensible violation of CODE/ RULE / ethics is that fact that the parties of TB&F, Barry Gold and other deceptive participants negotiated the sale of eToys assets to KB Toys/Bain in the million(s) of dollars range. Whereas I, had a plan that TB&F & Barry Gold said no, vehemently to, of placing the eToys assets in the retail stores of PlayCo. Where the DEBTOR could have achieved returns of 70% on the dollar. TB&F said no, said OZER Group was giving 30 % on a dollar that was more than the 25% we were going to get from KB in eToys and that the bank(s) controlled PlayCo. What TB&F did not point out to the Creditors' Committee or Appellant in the PlayCo case is that the Bank(s) were Wells Fargo and Paragon Capital. (both of whom TB&F had relationships with). Furthermore Paragon Capital was owned by Wells Fargo and OZER Group. (the list of offenses just keeps growing)

36.    In the KB Toys Case TB&F sought to prosecute the parties of KB Toys that received payments of over $100 million, pre petition. Knowing that TB&F had a relationship, incestuous with Michael Glazer/Bain Appellant placed a Memo of MisPrison into the record of KB which stated these facts and instead of the Trustee doing the correct thing, Mark Kenney who is the attorney for the Trustee in KB Toys, Kmart, eToys, Bonus stores and more, did ask the Judge (His Honor Sullivan) to expunge my statement. This was done so expeditiously the signed Order was in the Public Record before the matter was concluded in front of His Honor.

37.    The following week His Honor was removed from the KB case by a signing of Her Honor Mary Walrath.

38.    Lawrence Friedman as Chief Administrator of the US Trustee Office in Washington, D.C., gave me his personal assurance that the matter would be handled correctly.

39.    Then, on February 15th, 2005, Frank Perch as Assistant US Trustee in Wilmington, Delaware, emailed the Motion to Sanction TB&F.

40.    Then Frank Perch went on vacation (and has now vacated his position.)

41.    Then Mark Kenney, along with the "new" US Trustee that Lawrence Friedman had placed in Philadelphia, one Kelly Stapleton, filed a motion to settle the TB&F matter with broad based immunity language that was drafted and negotiated by James Garrity, ESQ, Sherman & Sterling, and who used to be a Federal Judge in the District of New York.

- 21 -

42.    Then I sent an email to Lawrence Friedman regarding the "insult" of that maneuver while Appellant showed the parties that copies were sent to various AG offices & the Wall Street Journal, who began calling persons for comments.

43.    Lawrence Friedman can no longer solve the problem as he resigned from the US Trustee Office for personal reasons.

44.    Robert Alber and I placed motions in the record on December, 2004, that showed that the eToys PEDC had decided to settle a matter involving eToys v Goldman Sachs for pre-petition payments…. R.R. Donnelley was a committee member and had two people on their board from Goldman Sachs.

45.    R.R. Donnelley and Goldman Sachs decided to divest themselves of one another to the tune of $350 million on December 16th, 2004.

46.    MNAT to this day has NOT declared that they worked for Mattel in 1999, who was the senior creditor and Committee Chairman in eToys (*Exhibit 13 the MNAT Mattel consent*).    This would have mandated the disqualification of MNAT.

47.    MNAT did not declare, until we pointed it out, that it worked extensively with Goldman Sachs.  MNAT still works with Goldman Sachs. Nor did MNAT disclose until the mandate of additional disclosures that MNAT had previously worked for the DEBTOR.  Where MNAT not only represented Sachs and GE Capital Corp (GECC) in the Finova Case, but that MNAT represented them both concurrently while allegedly fighting against them in the eToys case, and that the case filing numbers of the Finova cases ends at 01-705, where MNAT represents Goldman Sachs and eToys where MNAT represents the DEBTOR, where the DEBTORS case number is 01-706, where MNAT represented the DEBTOR against Goldman Sachs, while failing to disclose (as the OPINION of Her Honor

points out) and therefore eToys and Finova were filed back-to-back as it appears, by the same individual.

48.     MNAT stated, under Oath, that they do not require all of their attorneys to comply with ethics requirements when Robert Alber questioned them, under Oath about the signing of a document, which MNAT replied that "they do not require their Counsel(s) to read documents they sign".

49.     TB&F along with my former Counsel, a former Trustee in Wilmington, Delaware, Henry Heiman of Heiman, Aber, Goldust & Baker, threatened me to "back off" or I would find No work and they would even come after me for monies I had already been paid.

50.     This was a threat made after Henry Heiman submitted the Affidavit of the former Chairman of the Creditors' Committee into the record as additional support to Appellant's claim.

51.     Then, after submitting that Affidavit which undeniably substantiated my claim, Henry Heiman started a new firm.

52.     We had a trial date of February 4th, 2005, for the CLI claim.

53.     A new firm took on CLI, but would ultimately not represent CLI or Appellant in the allegations of the deceptions; that firm was Brooks & Hochman, LLP.

54.     Brooks, Hochman was consistently trying to get Appellant to "adapt" my testimony to fit the implied meaning of the contracts, as if all parties were dead. Which Appellant adamantly refused to do so, stating to them that Appellant could not, even under the guise that Appellant am rightfully entitled to be paid, give false statements, especially when Appellant am alleging false statements and fraud upon another.

55.     Appellant had originally told Brook, Hochman that I wanted to depose "all" the parties as one liar can handle a situation, but many liars tend to mess up; as we have already witnessed here.

56.     Brooks, Hochman had originally told me "No!" and that they were doing this case on a contingency basis and had already paid $20,000 in fees to local Counsel in Delaware.  That they could only afford to depose 3 or 4 "key" persons who were the most knowledgeable in my case.

57.     Then Brooks, Hochman told Appellant they changed strategies and wanted to depose everyone.

58.     Brook Hochman then instructed Appellant that they were going to put off the June, 2005, trial date to September, 2005.  Which Appellant had waited three years to obtain.

59.     Appellant strenuously objected, but they told me it was in Appellant's' best interest.

60.     Then Brooks, Hochman placed a motion before the Court to withdraw.

61.     Her Honor Walrath, without any reason given, ruled that the CLI claim would be adjudicated by His Honor Randolph Baxter.

62.     His Honor Baxter then allowed the new stipulated Scheduling Order.

63.     His Honor Baxter then allowed Brook Hochman to withdraw.

64.     His Honor Baxter gave Appellant 10 days to seek new Counsel.

65.     His Honor Baxter issued an Order that warned of Sanctions should I, Laser Steven Haas, post any pleadings without Counsel.

66.    Then the PEDC put in a motion to dismiss Appellant that His Honor approved.

67.    It was unreasonable, given all the "bad faith" etc. that was occurring, for the Court to only allow CLI 10 days to locate and retain new Counsel.  It was even more "bad faith" not to allow the Counsel that was present to supply his "pro hac vice" and participate.

## ARGUMENTS AGAINST PEDC MOTION TO DISMISS

68.    I, Steven Haas, am permitted under Rule 24 and Bankruptcy 7024, the "Right of Intervention", and/or Under Fed Rule of Civ Proc. 25, "Substitution of Parties", and/or Fed Rule of Civ Pr. 23.1, "Derivative Right of Shareholder", and/or 503(b) "Substantial Contributions", as 100% sole owner of the assets of CLI, and as the sole appointed liquidator who only used CLI at the behest of the "fraudulent" parties, most importantly given the overwhelming, incontrovertible proof of "deceit" under Rule 60(b)(6) Appellant has abundant right to be heard.  The pursuit, interest of Justice with a clear understanding that precedents are being set by this case that will destroy the "Judicial" process and the integrity of the System unless justice is done correctly.

69.    As previously stated by Her Honor Walrath in citing Rule 60(b)(6) (the excerpt that requires emphasis to be added here is) ---- *holding that "the failure of an attorney employed by the estate to disclose a disqualifying conflict of interest, whether intentional or not, constitutes sufficient "extraordinary circumstances" to justify relief under Rule 60(b)(6).  To hold otherwise would only serve <u>to penalize the (Plaintiff)</u> for delay that was beyond his control and <u>to reward conflicted attorneys</u> for failing to disclose their conflicts beyond the one-year period."*  It would be a great miscarriage of justice to

permit the perpetrators of gigantic Fraud & Conspiracy to do Fraud upon the Court, the System, the ESTATE, the equity holders, the Creditors and other parties of interest such as the Appellant, that were not part of the subterfuge, where Appellant performed a job that is now apparent to any simple review that one has to admit Appellant was overwhelmingly successful given the fact that all parties both within and without needed Appellant's demise to line their pockets with greater wealth, needless to say that the Fraud as a whole, that as overwhelming as it may currently be, is still largely undisclosed & uncovered. Where the perpetrators only needed the "non existence" of the Chairman of the Creditors' Committee, to cement the ruse (which did occur). What is occurring is white collar Fraud that the parties have received an "Insulting" slap on the wrist with the $750,000 penalty from the Chief Justice of the Bankruptcy Court, while still receiving more than $14 million in fees in violation of 101(14) as none of them, NONE, are disinterested; displaying, with the proof being Public Pacer Court records that clear violations of 2014, 2016, 327, 101(14) USC 155 Fee Fixing and more, where even if you were to allow Barry Gold not to disclose in a regular case as a CEO (which is in violation of OCP precedents) we have the evidence that the relationship with TB&F is extremely "Extensive", that the US Trustee told all parties that whomever replaced an officer of eToys had to be "arms length" from all parties, that His Honor Farnan in Wilmington, Delaware, did set both the "quantitative" and "qualitative" standards for who must apply as a Professional. Where we also have the Ellen Gordon Billing statements of Docket Number 467 "while waiting for the Court approval of the hiring of Barry Gold" –that Appellant now argues, that once all the perpetrators were aware that the Chairman was taking an unexpected early retirement, the subterfuge no longer needed to take the risk of disclosing the relationship of TB&F and Barry Gold.

Which is contravened by the very precedents that were set in the Delaware Bankruptcy Courts where all Courts have held that 'anyone' who plays a central, core, key, germane or autonomous role in the issues of an ESTATE, must apply and disclose.

70.    The PEDC has brought before this Court the motion to dismiss, which the PEDC in the Notice stated that it noticed Steven Haas by "other means".  Whereby the Appellant states that the beast of deception just will not give up as it appears that they (the PEDC, TB&F, MNAT, Barry Gold) attempted to have this Court hear a dismissal without Appellant's presence, as they have known for long a while the only way to contact Appellant is by email.

71.    The PEDC also quotes the Table of Authorities using In re: Carefirst of Maryland Inc. v. Care First Transportation Inc. which does not apply as Carefirst of Maryland, which is a "Blue Shield" entity, sought to dismiss Care First who had sent a letter against Carefirst using the name Carefirst.  As a Delaware Corporation it was found that Care First, via a corporate officer, could not defend itself as it had a) no Counsel and b) no legal brief of rule or standing and made no "good faith" effort to state its case.  Whereas under "derivative right of shareholder" if a corporation fails to accomplish an issue that results in material affect of a shareholder a shareholder can claim derivative rights, as Appellant claims herein.  Also it does not compare to this case as Appellant have made every good faith effort to comply, and endeavor that Appellant handle the affair with Counsel, but given the fact that TB&F represents a disproportional amount of control in Bankruptcy cases that are above $10 million retail, that Appellant has submitted a Motion to seek removal of Mark Kenney as Counsel for the Trustee under Code & Rule 324(a) and 2020, that I have alleged Fraud, Conspiracy & Corruption that "no one" ever wants to come

near. That the Wall Street Journal on July 25th, 2005, published an article, that the FBI Bulletin News, along with the White House Bulletin News, has given the case review, that the Dow Jones Bankruptcy News Service along with 'Law Professor Blog' have made note of the Travesty of Justice that has occurred by the "slap on the wrist" sanction of TB&F, along with the fact that Appellant can document to this Court that Appellant have gone to extreme measures to gain Counsel, that Appellant did have Counsel appear for CLI on August 22nd, 2005, but His Honor Baxter refused to allow him to place his "pro hac vice". That combined with the fact that there are also two (2) Appeals of the Judge's Order and Opinion of October 4th, 2005, one of which (Appellant's) has been designated for this same District Court. Appellant does hereby state that the case of Carefirst has no similarity to CLI or Appellant whatsoever.

72.    The PEDC has also sought to use the fact that In re: Care First quotes Rowland, California, Men's Colony case which is a Supreme Court Decision. That case again has little or no applicability to this case whatsoever as that case is about a group of Prisoners' Right(s) in seeking to not have to pay filing fees due to indigent status. Where the Court found that a "person" may or may not mean "association" "group" (or as here a Corporation) as the Supreme Court had dissenting opinions on the Constitutional meaning of "persons". In that case it was decided that the "persons" in the Man's Colony case they had not proven their indigent status, the case was not a clear cut case on the "pro se" issue.

73.    Finally, the PEDC seeks to quote the earlier arguments that have been utilized by the Delaware Bankruptcy Court to suppress CLI/Steve Haas without Counsel. I again argue that I have rights under Fed Rule of Civ Prc. of "substitution", "right of intervention", "derivative right of shareholder", and Rule 60(b)(6) that "extenuating

extraordinary circumstances" exists here of Fraud and Corruption by the overwhelming, incontrovertible, insurmountable evidence of extensive collusion & deceit exists, that the Appellant's good work in essence did harm to Barry Gold & TB&F, along with their previous employer(s), who now also currently employs ADA (In re KB Toys 04-10120). That combined with the fact that Barry Gold, TB&F, MNAT, Fred Rosner and even the Chairman of the Committee did discourage Appellant from seeking independent Counsel as a "cost saving measure to the DEBTOR's Estate is concrete rebuttal grounds for not dismissing Appellant. Plus the overwhelming apathy/failure of the U.S. Trustee's Office to do its Duty as required under 28 USC § 586 (a)(3)(F), the duty to Notify & Refer, where in this case alone we have evidence of over 50 felonies occurring, and where many of the acts have been admitted to. But due to the fact that Goldman Sachs, Bain Capital, Mitt Romney (co-founder and controlling person of Bain Capital, Governor of Massachusetts, and control of Stage Stores), Josh Bekenstein (co-founder of Bain Capital), Shearman & Sterling, Liquidity Solutions, the Madison entities, R.R. Donnelley, the Bousquette family tree: one brother, Mathew Bousquette, was until very recently Senior EXVP of Mattel, the sister, Janine Bousquette, was an Executive at eToys and until recently Sears, while another brother, William, is an Executive at Goldman Sachs (which could very possibly be how the former Chairman of the Creditors' Committee was forced into an unexpected, early retirement from Mattel). Take all this and add to it the (still undisclosed) relationship that MNAT worked for Mattel, that Barry Gold and TB&F worked with Stage Stores which also engaged Michael Glazer the CEO of KB Toys.

74.    None of these extenuating circumstances are within any of the authorities that the PEDC quotes, nor do any of the authorities even remotely resemble these Appellant's §situation(s).

## SUMMATION

75.    The Appellant is a liquidator that has gone above and beyond the call of duty, and the Appellant is in fear of his life as all other threats of business demise has occurred to Appellant.

76.    Appellant is here testifying under penalty of perjury, that Appellant has proof of countless felonies that both the US Trustee Office and the Delaware Bankruptcy Court have shown little ability or desire to deter or to correct.  That it appears much more the desire of all parties involved to quietly sweep the issues(s) under the carpet and if the Appellant is the messenger that has to be sacrificed in the process, so be it, the parties will dismiss the Appellant with glee, if permitted.  Would a crook not be glad that the bank guard was fired for hitting the alarm button!

77.    The duties to "Notify & Refer" by both the Trustee and the Bankruptcy Court are non evident.  Along with the duty to do sufficient deterrent.  That the big issue is Billion dollar($) players such as Granite Bank, Sankaty (offshore), Liquidity Solutions, Madison (who bought many claims in eToys and Liquidity is co-debtor with STAGE, while Madison's registered agent is the Firm of Kronish Lieb who is defending TB&F herein), along with other companies that the Governor of Mass. Bain, Stage Stores and more, along with Goldman Sachs, TB&F and there remain many more connections involved that will "dumbfound" any honorable person who desires to see integrity in and of

& by the System, where the Judicial process as a whole appears to be corrupted in Wilmington DE Bankruptcy Court.

78.    It would be a miscarriage of justice to allow the felonious parties to keep their subterfuge quiet, punish the plaintiff (Appellant) while allowing the perpetrators to keep the lion share of the $14 million (+) of fee's etc received to date (needless to say the fact that the monies that Liquidity Solutions has received are rescindable and the overseas monies of DEBTOR are still unaccounted for).

79.    Under the Right of Intervention, the Right of Substitution, the Derivative Right of Shareholder, Rule 60(b)(6) and 503(b) Substantial Contribution this Appellant, with the fact that the adversarial parties herein drafted the Appellant's contract, discouraged Appellant to have proprietary Counsel and the fact that the contracts were done "nunc pro tunc" after the work was vastly completed, while Appellant worked for more than 8 months under what is now apparent to ALL to be extreme duress and antagonistic environment which is full of subterfuge, deceit against Appellant, where all the parties that benefited from said subterfuge to the tune of more than $14 million state that Appellant was not liked, that Appellant did this, that Appellant's mom married men half her age, that Appellant was a hooligan in his youth, that Appellant is a pathetic specimen of a human being, that Appellant did not graduate hi-school, while ranting on and on how they do not like Appellant.  Whereby Appellant does concur, Appellant is fat, Appellant mom married men half her age, (the last one was 2 years older than I), Appellant is a liquidator, a hooligan that would not take their $800,000 bribe, that stands here, before this Court a common man of no formal education. Just a person who would not sell out his client, even if it meant losing his career.  Where also the contracts were signed by the Court

and approved Appellant as sole liquidation agent. That taken with the testimony of the Chairman of the Committee that Appellant was hired specifically seeking the utilization of the abilities of Steve Haas and not any particular company is overwhelming substantiation that Appellant has the right to be heard, reviewed and acknowledged. Where this Court has undoubtedly heard of appeals based on issues of "Fraud" before, but this Court has never, ever seen such overwhelming proof that said "Fraud" existed, that part(s) of said "Fraud" have already been acknowledged by another Federal Court. Where the very Order of sanctioning said "Fraud" is being appealed to this very Court. Not to overturn the fact that the violators are guilty, but to stop broad based immunity language that will allow the 50 plus felonies that are evidence by Public Court records (not hearsay, but concrete proof positive).

80      Wherefore Appellant prays this Court, for the sake of the judicial process, the integrity of the Federal Bankruptcy system, and the precedents that cannot be allowed to be set by the *subterfuge* that has occurred, to reject, **with prejudice**, the PEDC Motion to Dismiss.     Additionally, the Appellant now seeks this Court to move the matters that have lost control, and the ethical assurance of the judicial process in the Delaware Bankruptcy Court, to this Court. Where this Appellant makes all these allegations under "penalty of perjury" knowing that, unlike the Bankruptcy Court, this District Court has authority over criminal acts. Especially given the fact that an appeal also has been set to review the Order and Opinion of October 4th, 2005, to this very same Court.


Respectfully submitted this November 4, 2005              /s/ Steven Haas /CLI
                                                          President & CEO
                                                          Collateral Logistics, Inc. (CLI)