IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ------------------------------------------------- x<br>In re:<br>ETOYS, INC., et al.,<br>            Debtors.<br>------------------------------------------------- x | : Chapter 11<br>:<br>: Case Nos. 01-0706 (MFW)<br>: through 01-0709 (MFW)<br>:<br>: Jointly Administered<br>:<br>: **Objection Deadline: July 2, 2001, at 4:00 p.m.**<br>: **Hearing Date: July 9, 2001, at 4:00 p.m.**<br>  **(If Necessary)** |

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AUTHORITY PURSUANT TO 11 U.S.C. § 363(b) TO PROCURE INSURANCE POLICY AND PAY PREMIUMS

EBC I, Inc., f/k/a eToys, Inc. ("eToys"), and its affiliated debtors and debtors-in-possession, PMJ Corporation, eKids, Inc and EBC Distribution, LLC, f/k/a eToys Distribution, LLC (collectively, the "Debtors"), hereby move (the "Motion") the Court, pursuant to 11 U.S.C. § 363(b) for the entry of an order authorizing the Debtors to procure a replacement directors and officers insurance policy (the "D&O Insurance Policy") and pay the associated premiums. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

    1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) in that it is a matter concerning the administration of the Debtors' estates. Venue of these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    2.    The statutory predicate for the relief requested herein is 11 U.S.C. § 363.

## Background

3.   On March 7, 2001 (the "Petition Date"), the Debtors commenced their respective reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtors are continuing in possession of their respective properties and are operating and managing their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.   Debtor eToys, a Delaware corporation, is the direct parent of the other corporate Debtors, and holds all of the membership interests in the limited liability company Debtor.

6.   Based in Los Angeles, California, eToys was an Internet retailer focused exclusively on children's products, with an extensive selection of both nationally advertised and specialty toys, software, books, videos, music, video games, hobby products, party goods and baby products.

7.   eToys was incorporated as Toys.com in Delaware in November 1996 and later changed its name to eToys, Inc. in June 1997. It commenced operations in the fall of 1997. In July 1999, eToys acquired BabyCenter, Inc., which operates a website offering community, content and merchandise for new and expectant parents at www.babycenter.com. In October 1999, eToys launched eToys.co.uk, which offered consumers in the United Kingdom over 5,000 SKUs of children's toys, software, videos and video games. In November 1999, eToys began offering services to all provinces in the United Kingdom, offering a content and community site for parents and expectant parents located at www.babycenter.co.uk. In January 2001, eToys ceased offering services in Canada and closed the eToys.co.uk website.

8. As of December 31, 2000, eToys had sold products to nearly 3 million customers, and it had approximately 1,000 full-time employees. During the quarter ended December 31, 2000, eToys experienced net sales of $131.2 million and an operating loss of $74.5 million (excluding non-cash charges for deferred compensation and goodwill amortization and non-cash charges attributable to preferred stock).

9. On January 10, 2001, at eToys' request, an Informal Committee of Unsecured Creditors (the "Informal Committee") was organized, which consisted of seven unsecured creditors holding claims in excess of $90 million. The Informal Committee and its counsel worked in concert with the Debtors to address creditor concerns. On March 16, 2001, the Office of the United States Trustee for this district convened an organizational meeting and the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

10. For an extended period prior to the Petition Date, the Debtors actively marketed their assets and businesses for the purpose of effectuating a sale, merger or capital infusion for the Debtors. These efforts resulted in the sale of Baby Center, Inc., Baby Center Advertising, LLC, and Baby Center Canada, Ltd., but did not bring about a sale of the Debtors. Insufficient capital, brought about in part by a disappointing Christmas holiday season, precipitated the need for these filings.

11. On March 7, 2001, eToys shut down its website.

12. Following the Petition Date, the Debtors have continued to extensively market their assets and business and have entered into and consummated various transactions with respect to the disposition of their assets and business.

13. Promptly after consummation of the First Closing under the Asset Purchase and E-Mail Services Agreement, by and between eToys, Inc. and Etoys Distribution, LLC, and KB Consolidated, Inc., dated as of May 8, 2001, eToys changed its name to EBC I, Inc. and eToys Distribution, LLC, changed its name to EBC Distribution, LLC. The Debtors, however, have contractually retained the nonexclusive right to use the "eToys" name in connection with the winding up of the Debtors' business and the sale, transfer, disposition, liquidation and marshalling of the Debtors' respective assets.

### Relief Requested

14. By this Motion, the Debtors request that the Court enter an order under section 363(b)(1) of the Bankruptcy Code authorizing the Debtors to procure the D&O Insurance Policy to replace the previously terminated policy with National Union Fire Insurance Company of Pittsburgh ("National Union") and to pay associated premiums. The Debtors believe that procuring the D&O Insurance Policy is in the ordinary course of business. However, out of an abundance of caution, the Debtors seek relief requested herein.

15. Subject to Court approval, eToys intends to enter into the D&O Policy with RLI Insurance Company ("RLI") of Peoria, Illinois 61815. The following is a summary of certain of the material terms of the proposed D&O Insurance Policy:[1]

> **Named Insureds:** eToys, Inc.; eToys Distribution, LLC; eKids, Inc.; and PMJ Corporation
>
> **Coverage Amount:** $3,000,000, inclusive of defense expenses.
>
> **Retention:** $0 each Insured Person, each Claim for non-indemnifiable Claims; $100,000 each Insured Person, each Claim for indemifiable Claims; $100,000 for

---

[1] The foregoing summary of the D&O Insurance Policy is qualified entirely by the D&O Insurance Policy itself. In the event of any conflict between this summary and the D&O Insurance Policy, the D&O Insurance Policy shall control

the entity, each claim under Insuring Agreement; and $200,000 for each securities claim.

**Term:** May 20, 2001 through May 20, 2001, with one year Discovery Tail (as defined below).

**Who Is Covered:** All elected and appointed directors and officers of the Debtors.

**Premium.** $173,823 (including $5,000 broker fee).

A true and correct copy of the proposal for the D&O Insurance Policy is annexed as Exhibit "A" to the proposed Order attached to this Motion and a true and correct copy of the Specimen form of directors' and officers' insurance policy is annexed as Exhibit "B" to the proposed Order attached to this Motion.

16. Additionally, the Debtors seek the authority, in their discretion, to purchase two additional years of a Discovery Tail coverage for the Debtors' officers and directors. The Debtors have been quoted a cost of approximately $58,000 to purchase a second year of Discovery Tail coverage and approximately $40,000 to purchase a third year of Discovery Tail coverage.

### Basis for Relief

17. As a publicly held company, eToys, a Delaware corporation, ordinarily maintains a variety of business insurance policies. Such policies typically include insurance policies for the officers and directors of eToys.

18. Prior to the Petition Date through shortly after the Petition Date the Debtors maintained an insurance policy for their directors and officers with National Union (the "National Union Policy"). The National Union Policy was scheduled to expire by its terms on May 20, 2001. However, prior to the expiration of the National Union Policy, the Debtors identified an opportunity to save their estates substantial funds by invoking the right under the

National Union Policy to cancel the policy and purchase a "discovery period" of coverage (the "Discovery Tail"). During the Discovery Tail, the Debtors' directors and officers would be covered for claims that related to acts that occurred during the term of the National Union Policy, but would have no insurance coverage for acts which occurred after the date of termination of the National Union Policy. Upon the Debtors' motion, by Order, dated March 23, 2001, the Court granted the Debtors the authority to effectuate the foregoing changes in their directors' and officers' insurance coverage. By taking this action the Debtors anticipated that they would achieve a cost savings for the estates of more than $1,000,000 relative to the cost of obtaining an additional three years of coverage from National Union.[2]

19. After taking the above described steps, however, the Debtors determined that the sale and other disposition of their assets and the winding down of their business was not progressing as quickly as the Debtors had anticipated when the decision was made cancel the National Union Policy. As a result, the Debtors' officers and directors were exposed to a greater period than originally projected during which they would have no insurance coverage. Furthermore, the Debtors experienced resignations among certain of the individuals who had been acting as directors and officers on a postpetition basis.

20. Additionally, Mr. Barry Gold, a businessperson with substantial experience in in-court and out-of-court restructurings and liquidations, has agreed to become an employee of the Debtors. Under Mr. Gold's contract, he has agreed initially to be employed in the position of Wind Down Coordinator. The Debtors have requested that Mr. Gold become the President and Chief Executive Officer of eToys. While Mr. Gold has expressed a willingness to

---

[2] Furthermore, the funds used to procure the Discovery Tail coverage were obtained from a $500,000 trust fund previously established for the benefit of the Debtors' officers and directors. Accordingly, the acquisition of the Discovery Tail coverage resulted in no loss of assets to the Debtors' estates and creditors.

take on these additional responsibilities, his agreement to become an officer and director is conditioned on, among other things, satisfaction of the following conditions: (i) that eToys retain a directors' and officers' liability insurance policy with coverage satisfactory to Mr. Gold and eToys; and (ii) that the Court approve the D&O Insurance Policy. The Debtors believe that Mr. Gold's services are essential to the Debtors efforts to expeditiously wind down these estates and maximize value for the Debtors' creditors.

21.   It is also significant that the D&O Insurance Policy is much less expensive than the directors' and officers' insurance previously available to the Debtors. Whereas National Union was requiring payment of a premium in the amount of $1,300,000 for an additional three years of coverage, the insurer under the D&O Insurance Policy is willing to provide coverage over the same period for less than $300,000. Accordingly, the estates will still achieve a substantial cost savings over what would have been spent to renew the prepetition directors' and officers' insurance policy.

22.   For the foregoing reasons, the Debtors believe that obtaining the D&O Insurance Policy will have a beneficial impact on the Debtors and their estates. Accordingly, it is the Debtors' business judgment that the Debtors procure the D&O Insurance Policy and pay the associated premiums.

### Applicable Authority

23.   The Debtors' requested for authority to procure the D&O Insurance Policy is well supported under the applicable authorities. See 11 U.S.C. § 363(b). Section 363 of the Bankruptcy Code specifically provides that the Debtors "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). To approve the use, sale or lease of property out of the ordinary course of business, this

Court must find "some articulated business justification." See, e.g., Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); see also In re Abbott Dairies of Pa., Inc., 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of Lionel Corp. and requiring showing of good faith); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that Third Circuit adopted "sound business purpose" after Abbott Dairies decision); Titusville Country Club v. PennBank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

24. There is more than adequate business justification for the Debtors to obtain the D&O Insurance Policy and pay the associated premiums. Under applicable law and to discharge their obligations under the Bankruptcy Code, the Debtors require directors, officers or other responsible persons to govern and manage their affairs. Normally, entities like the Debtors maintain directors' and officers' insurance policies to cover any claim against their officers and directors. Indeed, as described above, it is extremely unlikely that, absent appropriate insurance coverage, the Debtors could get any competent individual to serve in these capacities for time periods necessary to the completion of these bankruptcy cases.

.25. The maintenance of appropriate insurance also provides a benefit to the Debtors' estates and creditors by providing an alternatives and primary source of recovery in the event that postpetition claims are asserted against the Debtors' officers and directors. Moreover, in the event that postpetition breach of fiduciary duty claims are asserted, the Debtors' directors and officers likely would assert claims for reimbursement and indemnification against the Debtors. Such claims, if valid, would be covered by the D&O Insurance Policy. Thus, the pool

of assets which comprise the Debtors' estates would not be further diminished by potential postpetition claims which will be covered by insurance.

26.  In sum, the Debtors have determined, in the exercise of their business judgment, that having the Debtors procure the D&O Insurance Policy will benefit the Debtors and their estates and creditors. Accordingly the Court should authorize the Debtors to procure the D&O Insurance Policy and make the associated premium payments.

### No Prior Request

27.  No prior request for the relief sought in this Motion has been made to this or any other court.

### Notice

28.  No trustee or examiner has been appointed in these Chapter 11 cases. Notice of this Motion has been given to (a) the United States Trustee, (b) counsel to the Committee and (c) the other parties on the general service list being maintained in these cases. In light of the nature of the relief requested in this Motion, the Debtors submit that no other or further notice is required.

[CONTINUED NEXT PAGE]

WHEREFORE, the Debtors respectfully request that this Court enter the form of Order annexed hereto and grant such other and further relief as is just and proper.

Dated: June 18, 2001

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Michael G. Busenkell (No. 3933)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

Counsel for eToys, Inc., et al.,
Debtors and Debtors-in-Possession

SPECIAL COUNSEL:

Howard J. Steinberg (CA 89291)
Irell & Manella, LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

232117